RICHARDSON vs. SINGLE.

*(1)* PRACTICE: REFERENCE: *Defective statement of accounts before referee, how cured.*

*(2)* CONTRACT *construed.*

1. In an action for an accounting, the matters constituting the plaintiff's claim upon his part were fully set forth in the complaint, and not denied; the cause was referred for the taking of testimony and statement of an account by the referee, to be reported to the court; no objection was taken before the referee to the manner in which the accounts of the parties were rendered to him; he examined them personally in reference to such accounts, and their various dealings with each other to which the same related; and the circuit court reviewed the referee's report, examined the testimony, and made a finding in which the account was fully restated. *Held,* that under these circumstances there was no error in the court's refusal to again refer the cause because of irregularity in the first state-

Richardson vs. Single.

ment of the accounts, or for a failure of the plaintiff to comply with Equity Rule 71, which requires parties accounting before a commissioner to bring in their respective accounts in the form of debtor and creditor, etc.

2. G. had contracted with R. and S. that the last named parties should enter on G.'s land during the then next winter, and cut timber to the amount of about 1,500,000 feet, haul and saw the logs, run the lumber to market, and there divide it so that one-third should belong to G. and the other two-thirds to R. and S., on condition that for every thousand feet received by G. he should allow R. and S. $12, and for the remainder they should allow G. $1.50 per thousand as stumpage. For the purpose of performing this contract, R. and S. then contracted between themselves that R. should log and saw 1,500,000 feet of lumber, more or less, during the following winter, and should run the same to market; that S. should pay R. "$14 for each and every thousand so put in and run to market," by advancing $2,500 for the use of the logging camp during the winter, the balance to be paid from the avails of the lumber; and that the profits or losses should be divided equally between the two parties. *Held*,

(1) That the contract between R. and S. is to be construed with reference to their prior contract with G. relating to the same lumber.

(2) That by the clear terms of the second contract, R., upon fulfillment thereof on his part, was entitled to receive from S. $14 per thousand upon *all* the lumber so manufactured and run to market, including the one-third which became the property of G.; and that the expense of stumpage and the profits of the transaction were to be divided equally between said R. and S.

APPEAL from the Circuit Court for *Outagamie* County.

Under date October 24, 1871, *Richardson* and *Single*, the parties to this action, entered into a contract under seal with one Goodhue, whereby the latter, after reciting that he owned the timber on certain lands, agreed to sell, transfer and convey to the two former all the pine timber on said lands fit for lumber, or so much thereof as they should cut, haul and put in during the then coming winter, at $1.50 per thousand feet. In consideration thereof, *Richardson* and *Single* agreed to enter upon said lands, and, at their own cost and expense, to cut, haul and put in, during said winter, as many saw logs therefrom as they could, "to the amount of 1,500,000 feet, more or less," and to cause the same to be manufactured into lumber,

and to run the lumber to market on the Mississippi river. The contract further provided that when the lumber should arrive in market, it should there be divided into three equal parts, one of which should belong to Goodhue; and that for every thousand feet retained by the other parties they should pay Goodhue $1.50 for stumpage, and for every thousand feet received by Goodhue he should allow them $12. There was also a provision that *Richardson* and *Single* should have the right to cut, during the winter of 1872–3, any timber on said lands that should not be cut during the winter of 1871–2, and to manufacture the same into lumber and run it to market on the same terms above described.

For the purpose of carrying into effect the above contract on their part, *Richardson* and *Single*, on the 8th of November, 1871, entered into a written contract with each other, by the terms of which *Richardson* agreed to "log, saw and run to market 1,500,000 feet of white-pine lumber, more or less," the logs to be put in during the winter of 1871–2, and run to market as soon as circumstances would permit; and *Single* agreed to pay *Richardson* $14 "for each and every one thousand feet so put in and run to market, by furnishing him during the winter $2,500 as the same might be required for supplying the logging shanty," the balance "to be paid from the avails of the sale of said lumber." The contract contained, in addition, the following clause: "And it is further understood and agreed by and between said parties, that the profits which may be made, or the losses that may be sustained, are to be divided equally among them."

The complaint herein, after setting out said last mentioned contract, alleges that in pursuance thereof the plaintiff cut and logged during the winter of 1871–2, and ran to market and delivered to the defendant thereafter, about 1,362,963 feet of lumber, all of which defendant received, and sold at about $18 per thousand, amounting to about $25,000, the whole of which amount the defendant received, and refused

to pay plaintiff his share thereof; that plaintiff is entitled to receive from defendant $14 per thousand for said lumber, amounting to $19,081.50; that the profits arising from said transaction, after paying plaintiff this sum, amount to about $5,500, and plaintiff is entitled to receive one-half of that amount, being about $2,750, making his aggregate demand from defendant $21,831.50. It then alleges that defendant has advanced to plaintiff upon said contract, in cash, goods, etc., several thousand dollars, the exact amount of which plaintiff is unable to state, but alleges that there is due him from defendant a large sum of money, to wit, $10,000, on account of said copartnership transactions; that the copartnership has terminated; and that defendant refuses to fully and fairly account with plaintiff as to said transactions, and pay him the amount due thereon. It therefore asks for an accounting between the parties as to said transactions, and that defendant be adjudged to pay, etc.

The answer sets up the contract between these parties and Goodhue, first above described, and alleges that the lumber got out and run to market by plaintiff, under the contract of November 8th, here declared on, was the same lumber referred to in the Goodhue contract; that it was so got out and run to market in fulfillment by these parties of that contract; and that the sales of lumber, losses and profits, mentioned in the contract declared on, referred to and contemplated a disposition of the lumber pursuant to the Goodhue contract. It further alleges that, pursuant to the contract declared on, defendant advanced the $2,500 there mentioned, within a short time from the date thereof; that it was then ascertained that further advances from defendant to plaintiff were necessary to carry on the business, and it was orally agreed between them that plaintiff should repay him all such advances, with ten per cent. interest thereon; that in pursuance of this agreement defendant advanced to plaintiff in money $18,000, from November 7, 1871, to August 8, 1874. It is further alleged

Richardson vs. Single.

that defendant, for plaintiff and at his request, performed labor and services, and furnished teams, hay, provisions and provender, materials, tools and other goods, etc., to the amount of $1,500, which amount, with interest from the several dates of the items thereof, is set up as a counterclaim. The answer then sets up certain damages alleged to have accrued to defendant from the careless and improvident manner in which plaintiff performed the contract on his part; and also alleges that plaintiff is indebted to defendant "for stumpage incurred by him, for and on account of the plaintiff and at his request, and paid by defendant to said Goodhue," to the amount of $1,500, with interest.

There was a reply in denial of the counterclaim.

On the 22d of September, 1874, the circuit court for Marathon county, before which the action was then pending, referred it, on the plaintiff's motion, to a referee, to take the testimony and state the account between the parties, and report the same to the court.

The referee took the testimony offered by the parties, and reported it to the court, together with his own statement of the account between them. This statement was as follows:

STATEMENT *of accounts between* L. W. RICHARDSON, *plaintiff, and* JAMES SINGLE, *defendant.*

| 1873. | PLAINTIFF'S ACCOUNT. | | Cr. |
|---|---|---|---|
| June. | (Ex. C.) By 972,736 feet of lumber, run by plaintiff to Louisiana, Mo., and sold to D. H. & Co., contract price, @ $14 per M................................ | | $13,616 90 |
| July. | (Ex. D.) By 157,760 feet of lumber, run by L. Ward, @ $14 per M.................................... | | 2,208 64 |
| | Profit on 648,424 feet (⅔ of 972,636, to D., H. & W.), $4 per M........................................ | $2,593 70 | |
| | Deduct stumpage paid Goodhue on 648,424 feet, $1.50 per M...................................... | 972,63 | |
| | Leaving net profit.............................. | $1,621 07 | |
| | Plaintiff's share, one-half..................................... | | 810 53 |

Richardson vs. Single.

| | | |
|---|---:|---:|
| Profit on 105,172 feet (⅔ of 157,760, run by L. Ward), @ $4 per M.......... ...................... | 420 79 | |
| Stumpage paid Goodhue on $105,172 feet, @ $1.50 per M........................................ | 157 76 | |
| Leaving net profit............. ............... | $262 93 | |
| Plaintiff's share, one-half.................................. | | 131 46 |
| By 113,394 feet run from Weed Lumber Co. by B. T. Single, @ $14 per M........................... | 1,587 52 | |
| Deduct stumpage paid Goodhue on 75,596 feet, @ $1.50 per M.................... $113 39 | | |
| Lumber sold at $12.50; loss on 75,596 feet, @ $1.50............................. 113 39 | | |
| $226 78 | | |
| Deduct plaintiff's half of stumpage and loss........ | 113 39 | |
| Leaves amount for plaintiff.......................... | | 1,474 13 |
| By cutting, putting in the river, and running to Grand Rapids 241,509 feet of logs, @ $5.00...................... | | 1,207 34 |
| Total ................................................ | | $19,449 20 |

## DEFENDANT'S ACCOUNT.

| | | |
|---|---:|---:|
| Amount as shown on defendant's account, marked Exhibit "E." | | $18,095 86 |
| Interest on monthly advances made to plaintiff by defendant, on monthly advances over and above $2,500, as per contract, at 7 per cent. per annum.................................... | | 356 27 |
| | | $18,452 13 |
| [Then follows a statement of charges "deducted from defendant's account," and certain items which, it is stated, "defendant's testimony shows should be placed to plaintiff's credit," the whole amounting to $2,254.47.]........................ | | 2,254 47 |
| Total ........................... ...................... | | $16,198 66 |

## RECAPITULATION.

| | |
|---|---:|
| Plaintiff's account....................................... | $19,449 20 |
| Defendant's account....................................... | 16,197 66 |
| Balance due plaintiff...................................... | $3,251 54 |

Certain other charges in defendant's account against the plaintiff, amounting to $119.40, are also reported to be questionable. Attached to the report were various exhibits, con-

sisting of papers put in evidence by the parties, and including the two contracts above described. Exhibit " E," referred to in the referee's report, is a statement of credits claimed by the defendant against the plaintiff, including advances in cash, supplies, etc., for getting out logs under the contract, sawing the same and running the lumber to market, between November 7, 1871, and April 22, 1874, together with charges for alleged losses in the sale of two lots of the lumber, growing out of plaintiff's failure to run the same to market, and deliver it according to contract, the whole amounting to $18,095.86. In this account plaintiff was charged with the whole amount of stumpage, paid to Goodhue under the contract with him; no charges were made for interest; and there was no statement therein of credits to which the plaintiff was entitled.

Exhibit " H " appears to be a statement made by plaintiff of his account with defendant. In addition to several small items, amounting to $71, under date March 18, 1872, this account charges defendant with the following items:

| | | |
|---|---|---:|
| June, 1873. | By 648,424 feet lumber, $14 ... ............... | $9,077 93 |
| | By one-half profits on 648,424 of lumber, which was $2 per M. ................................. | 1,296 84 |
| | By 324,212 feet of lumber at $12 per M. .......... | 3,890 54 |
| July, 1873. | By 105,174 of lumber, $14 ..................... | 1,472 43 |
| | By one-half profits on 105,174 of lumber, which was $2 per M. ................................. | 210 34 |
| | By 52,582 feet lumber, $12..................... | 630 98 |
| | By one Wisconsin line........................ | 20 00 |
| April, 1874. | By 177,571 feet logs scaled at booms at G. Rapids, at $10 per M. ............................. | 1,775 71 |
| | | $18,446 07 |

It is not clear from the printed report, whether there was connected with this any statement of credits due the defendant; but if so, it appears to have extended over only a part of the time covered by the accounting.

After the filing of the referee's report, the place of trial was

changed to the circuit court for Outagamie county, and the cause came on for trial at a special term of that court in September, 1875. Plaintiff moved the court for judgment, upon the report of the referee and the proofs taken by him. Defendant objected "to a trial or hearing upon the report," for the reasons: "1. That the same was irregular, and not taken and returned according to the rule and practice of this court for stating the account of the parties. 2. That the referee's statement of the account of the parties did not comply with rule 71 of the rules in equity, and his return was irregular and void." Thereupon defendant moved that the record and proceedings herein be in all things referred back to the referee to take a statement of the account of the parties, and return the same in conformity with rule 71 of the rules in equity. The motion was denied. Afterwards, on the 15th of October, 1875, on defendant's motion and affidavits, plaintiff was ordered to show cause at the next term of said court, why the case should not be referred back to the referee to take certain newly discovered evidence set forth in the affidavits, and report the same back to the court, and also to show cause why a rehearing should not be granted upon said evidence, and proceedings upon plaintiff's part stayed for that purpose. On the hearing of this order, November 9, 1875, the parties stipulated in open court that the evidence referred to in the order might be taken by defendant before the referee at any time within thirty days thereafter, on one day's notice to plaintiff's attorneys, and should be reported to the court, and should thereupon be deemed part of the testimony in the cause; and that the attorneys should have fifteen days after the expiration of said thirty days, for filing written arguments in the cause. It appears that no further evidence was in fact taken, but that the respective attorneys filed their arguments, and that the court thereupon proceeded to hear the cause upon the testimony taken before the referee, and upon the written arguments. The court found, as facts, the making of the two

contracts above set forth, and that, under the contract declared on, plaintiff cut, manufactured, and run to market, 1,240,391 feet of lumber, at $14 per M., amounting to $17,365.47; that 972,638 feet of lumber was sold by defendant for $18 per M., and that one-half of the profits on two-thirds thereof over and above the $14 per M., amounts to $1,296.60; that 256,697 feet of said lumber was sold by defendant for $2,508.55 (viz. : 109,993, at $12.50 per M.; 114,017, at $16.50 per M.; and 32,687 at $15.50 per M.), and that one-half of the profits on two-thirds of said lumber over $14 per M., amounts to $112.-71; that 12,695 feet of logs cut by the plaintiff was sold by defendant for $82.46, and that amount received by defendant, and that one-half of two-thirds of the proceeds thereof amount to $27.48; that plaintiff cut and run of said logs to Grand Rapids, not included in the above amount, 108,600 feet of lumber, at an expense of $543; and that there was allowed to plaintiff, according to defendant's own testimony, other items of credit amounting to $293.60; making the "total amount of plaintiff's claim, besides interest," $19,638.86. The court further found the various sums which must be allowed defendant upon the items charged in his account marked exhibit "E," as advances to the plaintiff under the contract, payments for stumpage, etc., and also the amount which must be allowed him as interest on all the advances except the first $2,500; the whole amount of defendant's account against plaintiff thus allowed, being $16,566.85. In arriving at this amount, the court allowed defendant credit for only one-half of the stumpage paid to Goodhue, and disregarded his claim for any losses alleged to have accrued to him on plaintiff's failure to run the lumber to market and deliver it there according to contract. It further found "that there was a contract between the parties to pay interest on advances under the contract over and above the $2,500, and that the accounts of the parties are as above stated, and that the material allegations of the complaint are true." As conclusions of law, it

Richardson vs. Single.

held that plaintiff was entitled to the relief demanded in the complaint, and that there was due him from defendant $3,072.-01, with interest from April 22, 1874, making an aggregate of $3,537.93, for which it ordered judgment to be entered. Defendant filed the following exceptions to the findings and decision: " 1. The court erred in finding as a fact that all the material allegations of the complaint are true. 2. The court erred in its computation and balances, and the finding of fact deduced therefrom, viz.: that there is due plaintiff from defendant $3,072.01, with interest from April 22, 1874. 3. The court erred in its conclusion of law, that plaintiff is entitled to judgment against defendant for $3,537.93, and erred in directing judgment against defendant for that sum and costs."

From a judgment entered in accordance with the finding, defendant appealed.

*Gerritt T. Thorn*, for appellant, argued, 1. That the reference was not by consent, but was a compulsory one, under the statute (Tay. Stats., 1499, § 25); that there was no specific question of fact involved, upon which the referee was directed to report, nor was he to hear or decide any matter or issue, and his functions were not judicial but merely ministerial, he being directed simply " to take the testimony and state the account between the parties, and report the same to the court;" that the statute does not prescribe the method of doing this, and the only guide for the practice under the order was rule 71 of the old rules in equity (Tay. Stats., p. 2025), which declares that " all parties accounting before a commissioner shall bring in their respective accounts in the form of debtor and creditor;" that this is the same as rule 107 of the rules of the New York court of chancery (4 Sandf. S. C., 649, note), and is not abolished by the code, and the referee is a substitute for the commissioner and must conform to the rule ( *Wiggin v. Gans*, 4 Sandf. S. C., 646; *Palmer v. Palmer*, 13 How. Pr., 364; *Ketchum v. Clark*, 22 Barb., 319), and a party directed to account under the rule "must bring

in his *whole* account, including debits and credits, and for the whole time he is held accountable" (WALWORTH, Ch., in *Story v. Brown*, 4 Paige, 112; 2 Brown's Ch. Pr., 817, 818); that when these accounts are thus brought in, they become the *statement of the account* of the parties, and if it appears therefrom that there is any matter in dispute, it is the duty of the referee simply to take the testimony *upon such disputed items*, and it is not his business to *allow* or *disallow* any item, but simply to report the evidence thereon to the court; that the reference was not to take *all* the testimony in the cause, but only such as related to the *accounts* between the parties, the statement of such accounts being a mere collateral issue; that in other respects defendant was entitled to have the testimony taken before the court (*Brown v. Runals*, 14 Wis., 693; *Oatman v. Bond*, 15 id., 20); that in fact the testimony generally in the whole case was taken by the referee, who attempted to exercise judicial powers in making his own statement which was reported to the court; that plaintiff's motion for judgment upon the report was clearly unwarranted practice, and the court erred in overruling defendant's objection, especially as the plaintiff had given no notice of trial or argument; that, in the absence of such notice, the court had no power to proceed at all in the cause; and that nothing subsequently done by defendant's counsel was a waiver of the objection.  2. That the court adopted a wrong basis for adjusting the accounts between the parties; that the construction apparently put upon the contract by the court was, that defendant was to receive the $12 per M. from Goodhue, pay half the stumpage, and then pay plaintiff $14 per M. on all the lumber, including Goodhue's one-third, leaving plaintiff to pay the other half of the stumpage; that the true construction of the contract, and the only reasonable one in view of all the facts, is, that plaintiff was to receive from defendant $14 per M. in lieu of all expenses, including stumpage, on their two-thirds only, and also receive the $12 per M. to be

paid by Goodhue on his one-third, and share with the defendant in the profits, and bear half the losses; that the contract between the parties was nothing more than articles of copartnership to govern them as partners in carrying out the Goodhue contract; that it was plain from the Goodhue contract that the parties estimated the total expense in getting out the lumber and running it to market (independently of stumpage), at $12 per M.; that it was unreasonable to suppose that defendant had agreed to pay plaintiff $14 per M. for getting out and running to market Goodhue's one-third, when Goodhue himself was to pay only $12 per M.; that it was obvious from the plaintiff's own statement of his account in exhibit " H," that he regarded himself as entitled under the contract to only $12 per M. on Goodhue's one third; that courts of equity will imply waiver or modification of the provisions of articles of partnership from the acts or conduct of the parties (*Geddes v. Wallace*, 2 Bligh, 295; *Franklin v. Robinson*, 1 Johns. Ch., 157; *Jackson v. Sedgwick*, 1 Swanst., 469; *Const v. Harris*, Turner & R., 523; Parsons on Partnership, ch. VII, sec. VII, subd. 3, p. *238); and that in any event the plaintiff should be required to pay the whole stumpage on the other two-thirds, the $14 per M. being evidently intended to cover that as well as the other expenses. 3. That the court erred in adjusting the accounts of the parties, even upon the construction of the contract which it adopted; that, after allowing plaintiff for all the lumber which it found to have been cut, manufactured and run to market, it had further allowed him $543 for cutting and running 108,600 feet of logs to Grand Rapids; that this was clearly not a service performed under the contract, upon which alone plaintiff sues; and that, if he performed the service as a copartner, he cannot recover for it, one partner not being allowed to recover against another for services rendered in the joint business, except upon a special agreement therefor (*Franklin v. Robinson*, 1 Johns. Ch., 157, 165; *Bradford v. Kimberly*, 3 id., 431; *Caldwell v. Lei-*

*ber*, 7 Paige, 483). 4. That plaintiff was in fact not entitled to recover anything under his special agreement with the defendant set out in the complaint, because that agreement was one and entire, and a full performance by the plaintiff was a condition precedent to any right of recovery by him, and the evidence showed that he had failed to perform. 5. That under the rules and practice of this court in equity cases, the appeal brought up the whole case to be tried *de novo*, and the judgment would be reversed if not supported by the evidence. *Kimball v. Johnson*, 14 Wis., 674.

For the respondent, the cause was submitted on the brief of *James O. Raymond.* He contended, 1. That it was doubtful whether rule 71 of the old equity rules was in force, and whether, if in force, it applied to this case; that it only requires the accounts of the parties to be brought in in the form of debtor and creditor, and this appears to have been done; that it does not prescribe the form in which the referee's statement of accounts shall be made; that if these equity rules are still in force, defendant cannot take advantage of any irregularity, because he has failed to comply with rule 74 by filing exceptions to the report; and that any irregularities of that kind were waived by the subsequent acts of the defendant. 2. That no sufficient exceptions were taken to the finding of the court; that the first exception was insufficient unless all the material allegations of the complaint were untrue (*Paggeot v. Sexton*, 23 Wis., 195, and cases there cited; *Eldred v. Oconto County*, 33 id., 133), and that no allegation of the complaint was denied by the answer, and all must therefore be taken as true (Tay. Stats., 1439, § 10; *Hawks v. Ins. Co.*, 11 Wis., 188; *Fery v. Pfeiffer*, 18 id., 510); that the other objections were not sufficiently specific; and that the only question here was, whether the judgment was supported by the finding.

COLE, J. We fail to see any force in the objection that the

accounting between the parties was wrong, or in violation of equity rule No. 71. ·See 2 Tay. Stats., p. 2025. That rule provides that parties accounting before a commissioner shall bring in their respective accounts in the form of debtor and creditor, etc. The cause was referred to John Stumpf, who was agreed upon by the parties as the referee, to take the testimony, state the account, and report the same to the court. The parties went before the referee and rendered their accounts, no objection whatever being taken to the form or manner in which the accounts were rendered. The complaint fully set forth all the matters constituting the plaintiff's claim, and the complaint was not denied. This would seem to be sufficient to inform the defendant of the nature of the plaintiff's account; at any rate we think no more formal account on his part was necessary. Besides, the parties were examined before the referee in regard to their accounts, and in respect to their various dealings with each other. The circuit court seems to have reviewed the report, and to have examined the testimony, and made its finding, wherein the account between the parties is fully restated. If the referee had improperly allowed or disallowed any item in the account, the whole matter was before the court for correction. Under these circumstances, there was no error in the refusal of the court to again refer the cause to the referee because of an irregularity in first stating the account, or for any failure to comply with the rules upon the subject, if any such irregularity or failure there were. There was certainly no necessity to refer the cause back for the purpose of taking the newly discovered evidence, in view of the fact that the counsel on the other side stipulated that such testimony might be taken by the referee at any time within thirty days, and reported as a part of the evidence. The first error, therefore, assigned for a reversal of the judgment, is not well taken, and must be overruled.

This brings us to the question whether the circuit court adopted a wrong basis for the adjustment of the accounts be-

tween the parties, or placed a wrong construction upon the written contracts which are the foundation of the action.

The plaintiff claims that according to the terms of the written agreement dated November 8, 1871, he was to be paid by the defendant $14 per thousand feet for all the lumber which he should manufacture and run to market; and that he was to have, besides, one-half of the profits on the lumber transactions. This is certainly the plain reading of that contract; and the accounts between the parties were adjusted upon that basis. This contract should doubtless be construed in connection with the Goodhue contract which had previously been made. When so construed, it is clear to our minds that the circuit court stated the accounts between the parties correctly. The court in substance decided that the defendant was to receive the $12 per thousand feet on the one-third part of the lumber taken by Goodhue, and pay the plaintiff $14 per thousand feet on all the lumber which the latter should run to market, including the portion taken by Goodhue; and that the expense of stumpage and profits on the transaction should be borne and divided equally. The contract is not susceptible of any other interpretation than this, without doing violence to the language. But it is said, in opposition to this construction, that it could not have been the intention that the defendant should pay the plaintiff $14 per thousand feet on the lumber which was taken by Goodhue. We must look at the language used, to get at the intention of the parties. We find this clause: "And the said party of the second part [defendant] agrees to pay the said party of the first part [plaintiff] the sum of $14 *for each and every one thousand feet* so put in and run to market." This language is too explicit and unambiguous to admit of doubt. It is not alleged in the answer that there was any fraud or mistake in the contract, and it is therefore idle to claim that it does not express the real intentions of the parties. And to say that the words "each and every thousand feet" are limited, and applicable to only two-

thirds of the lumber put in and run to market, is taking a most unjustifiable, if not unexampled, liberty with contracts. It would be an unpardonable stretch of judicial power for the courts thus to modify and change the solemn contracts of parties. As the terms, therefore, of this contract are as strong and comprehensive as language can make them, it is impossible to say that the Goodhue lumber was not included in the clause.

It is suggested that there was a modification of the contract, or that the plaintiff waived its conditions. There is no evidence from which such an inference can be made.

An appeal was made to this court, by the learned counsel, to relieve the defendant from the hard and unconscionable conditions of the contract. The defendant asked for no such relief in his answer, and has not adduced the least scintilla of proof that he was in any way imposed upon in making the contract.

Again, it is said that the plaintiff should be charged with the whole expense of stumpage. But we find no authority for doing that in the contracts.

A further objection is taken, that the evidence shows that the plaintiff failed to perform the contract on his part. This position is not sustained by the proofs in the case. True, the defendant made advances to carry on the business, over and above the amount specified in the contract. But this was done under the verbal agreement stated in the answer. He says he was to make advances, and that the plaintiff agreed to repay them with ten per cent. interest. The circuit court allowed interest on the advances according to the contract.

As the account seems to be stated by the circuit court according to the terms of the contracts, the judgment must be affirmed.

*By the Court.* — Judgment affirmed.