ALFREY ET AL VS COLBERT.

Opinion rendered Sept. 26, 1907.

(104 S. W. Rep. 638).

1. *Indian Allotments—Conveyances of Allotment.*

By Act of Congress June 30, 1902, c. 1323, § 16, 32 Stat. 503 land allotted to a citizen of the Creek Nation shall not be alienated within

five years, and each citizen shall select 40 acres from his allotment for a homestead, inalienable for 21 years; further the section provides the method for selecting homesteads for certain classes of persons and that on the death of citizens their homesteads shall descend to their children, or if they have no issue, may be disposed of by will; in conclusion it declares that any agreement or conveyance which violates any provision of this "paragraph" shall be void and cannot be ratified and no rule of estoppel shall prevent the assertion of its invalidity. *Held*, that "paragraph" means "section," the provision as to conveyances being void therefore applying to other lands allotted as well as to homesteads.

2. *Same—Conveyance—Action to Set Aside.*

By Act June 30, 1902, c. 1323, § 16, 32 Stat. 503, modified by Act April 21, 1904, c. 1402, 33 Stat. 204, land allotted to citizens of the Creek Nation shall not be alienated for a certain length of time in the case of minors and any conveyance which violates the above provision shall be void and cannot be ratified and no rule of estoppel shall prevent the assertion of its invalidity. Such a minor though he misrepresented his age can maintain action to have the conveyance set aside.

3. *Same—Consideration.*

A minor Indian, who misrepresented to the purchaser that he was of age, in a suit to set aside a conveyance of his allotted land void by Act June 30, 1902, c. 1323, § 16, 32 Stat. 503, modified by Act April 21, 1904, c. 1402, 33 Stat. 204 shall be required to return the consideration received by him.

4. *Same—Ratification.*

A minor Indian, who, receiving $550 makes a deed of allotted land, void by Act June 30, 1902, c. 1323, § 16, 32 Stat. 503 modified by Act April 21, 1904, c. 1402, 33 Stat. 204, and after he becomes of age without further consideration except $5, make another deed to the same person of the same land does not give an original conveyance but merely attempts to ratify the first deed, which is not susceptible of ratification.

Appeal from the United States Court for the Western District of the Indian Territory; before Justice Louis Sulzbacher, July 23, 1906.

Action by Perry Colbert against R. J. Alfrey and another. Decree for plaintiff. Defendants appeal. Affirmed.

On June 28, 1904, plaintiff below, appellee here, filed his complaint in equity against defendants below, appellants here, and states: That plaintiff, Perry Colbert, by his next friend, James Colbert, complaining of R. J. Alfrey and G. D. Carl, defendants, respectfully shows to the court: (1) That plaintiff is a minor, son of James Colbert, and is 19 years of age, a citizen of the Creek Nation; that defendant Alfrey resides in the state of Arkansas; and that defendant Carl resides in the town of Wagoner. (2) That plaintiff, being a citizen of the Creek Nation and on the Creek freedman roll, was the owner as allottee of the S. ½ of the N. W. ¼, less 85-100 acres, occupied as right of way by the Kansas & Arkansas Valley Railroad, and lots 5 and 6, in section 4, township 19 N., range 17 E., the same being 120.24 acres, lying adjacent to the town of Inola; that on the 25th day of April, 1904, plaintiff was a minor under 20 years of age; that he was ignorant, unlearned, and unable to read or write, or understand the English language, and that he had a weak and feeble mind and memory; that defendant well knew plaintiff to be a minor, and well knew him to be ignorant and unlearned and of feeble mind, and did then and there give to plaintiff whisky, and while under the influence of whisky, and with the intention to cheat and defraud plaintiff, then and there procured plaintiff to make a pretended deed of conveyance for the recited consideration of $550, and thereby transfer the above described property to the defendant R. J. Alfrey; that said deed was without adequate consideration and fraudulent and void; that said deed was taken in the name of R. J. Alfrey, although the defendant Carl, the plaintiff is informed and believes, has a one-half interest therein. (3) Plaintiff charges that said land was and is reasonably worth the sum of $2,500; that defendants paid plaintiff on the date aforesaid the grossly inadequate sum

of $550 in cash; that defendants are insolvent, and have no property within the jurisdiction of this court subject to execution; that defendants are attempting to, and will, unless restrained by this court, sell said property. He prays that upon final hearing the court enter a decree canceling and setting aside said pretended conveyance and for general relief.

On the 14th day of December, 1904, defendants filed answer, and for their answer deny that Perry Colbert is a minor under the age of 21 years, and deny that he was under 21 years of age at the date of the transaction mentioned in said complaint. They admit that the said Perry Colbert was on the Creek freedman roll, and was the owner, as the allottee, of the land mentioned in said complaint. Defendants deny that said Perry Colbert had a weak and feeble mind and memory. They deny that they furnished him with whisky, and that while under the influence of whisky, with the intent to cheat and defraud him, they procured him to make a deed of conveyance transferring the property described in the plaintiff's complaint to the defendant R. J. Alfrey. They admit that Perry Colbert made a deed conveying the said land to the defendant R. J. Alfrey, and that the same was delivered, and they state that the consideration of $550 was paid by the said Alfrey to the said Perry Colbert; and they state that at that time that was a reasonable price for the said land, and that there was no undue influence of any kind or character used to induce the said Perry Colbert to part with his title to said land. They deny that the said land was then worth the sum of $2,500, deny that they are insolvent, and pray that the plaintiff take nothing by his suit.

On the 23d day of December, 1904, an agreement was filed for the appointment of a receiver, and a receiver was subsequently appointed. On the 14th day of March, 1905, this cause was by the court referred to Peter Deichman, as special master in chancery, to take evidence and report, with conclusions. On the 15th day of December, 1905, defendants

filed supplemental answer, and state that since the filing of their original answer in this cause, to wit, on the 21st day of November, 1905, the plaintiff Perry Colbert for a valuable consideration has executed to them a deed conveying the land in controversy in this suit, as will appear from a copy of said deed, attached as part of the supplemental answer; that the said Perry Colbert at the date of the execution of said deed was over 21 years of age; that by the execution of said deed the defendants are the owners and entitled to the possession of said premises; and pray that the plaintiff take nothing by his suit.

On the 21st day of December, 1905, the special master, Peter Deichman, filed his report herein, as follows:

"*  *  *  The following items of documentary proof were offered in evidence before me, to wit: Item 1. Certified copy of warranty deed from Perry Colbert, a single man, to R. J. Alfrey, conveying the south half of the northwest quarter, less 85-100 acres occupied as right of way by the Kansas & Arkansas Valley Railroad, and lots five (5) and six (6) of section four (4), township nineteen (19) north, range seventeen (17) east of the Indian meridian, situated in the Creek Nation, Indian Territory, containing one hundred twenty and 24-100 (120.24) acres, more or less, as the case may be, according to the government survey thereof, for the consideration of $550, dated April 25, 1904, and acknowledged and filed for record on the same day at Wagoner, Indian Territory. (Plaintiff's Exhibit A.) Item 2. Affidavit of Alec Keys, dated April 25, 1905. (Plaintiff's Exhibit B.) Item 3. Affidavit of Will Ross, dated April 26, 1905. (Plaintiff's Exhibit C.) Item 4. Copy of the freedman roll from the Dawes Commission, containing the name of the plaintiff, showing him to have been 18 years of age on June 16, 1901. "And from all such evidence I find:

"First. That on April 25, 1904, the plaintiff, Perry Colbert, was the owner as allottee, being a citizen on the freedman roll of the Creek Nation of the Indian Territory, of the premises described in item 1 of this report; that on the same day he made a warranty deed to said premises to the defendant R. J. Alfrey, a certified copy of which deed was in evidence and shown in item 1 of this report.

' "Second. That it is alleged in the complaint filed herein that the plaintiff, Perry Colbert, was at the time of the execution of said warranty deed, and at the time of the filing of this suit, a minor, under the age of 21 years; that said plaintiff was also of unsound mind, and under the influence of whisky, which had been furnished him by the defendants herein, at the time he executed said warranty deed; and, further, that the consideration mentioned in said deed was grossly inadequate.

"Third. That the fact the complaint filed herein states that the plaintiff was a minor at the time of the filing of said complaint is sufficient proof upon which to dismiss this suit, because at common law a conveyance by an infant is merely voidable, not void, and he cannot disaffirm it during his minority Brewster on Conveyancing, § 315; Tiedeman on Real Property, § 792; Shipley vs Bunn, 125 Mo. 445, 28 S. W. 754. And I find no statute in force in the Indian Territory changing the law as to an infant bringing a suit to disaffirm his conveyance, when such conveyance is merely voidable, and not void. While the defendants did not see fit to take advantage of so gross a defect in the complaint, I believe it is the duty of the court to take judicial knowledge of the common law in force; and, if it were not for an act of Congress mentioned in the tenth finding of this report, I would at once recommend that this suit be dismissed.

"Fourth. That the evidence offered herein is very uncertain, indefinite, and unsatisfactory on every material

matter; that the age of the plaintiff is the most important question involved herein.

"Fifth. That the preponderance of the testimony goes to show that the plaintiff was born the latter part of March, 1884, and was 20 years old at the time he executed the deed sought to be set aside by this action, and at the time of the filing of the complaint herein. The testimony of Gabriel Jamison, who principally raised the plaintiff, what little raising he got, and who seems to be a citizen of the Creek Nation of more intelligence than ordinary, fixes the age of the plaintiff by one of his own children. He also explains why the record in the Dawes Commission shows the plaintiff's age to have been 18 on June 16, 1901.

"Sixth. That the plaintiff was under the influence of whisky at the time he executed the deed in question has not been established, nor has it been satisfactorily shown that he has a defective mind, or is a non compos mentis; but it is very certain that he is very ignorant and inexperienced in all business matters.

"Seventh. That the price paid by the defendants, $550, for said premises, is grossly inadequate, is shown by a preponderance of the evidence. G. D. Carl, one of the defendants, and who was to have one-half of the profits, testifies that he had sold the said premises for $2,700, and was stopped from completing said sale by the bringing of this suit, and that this was within two months after the purchase by the defendant R. J. Alfrey from the plaintiff, and that there had been no improvements put on said premises during that time, and the evidence does not show that the premises had materially enhanced in value.

"Eighth. That fraud has not been conclusively proved, but there is some very strong evidence supporting it. G. D. Carl, who testifies that he was to get one-half the profit, if Alfrey made anything in the transaction, and Bennie Williams,

who got $25 from the defendants for his assistance in getting the deed executed, are the only witnesses to the signature of the plaintiff, who signed by mark, shown on the deed.

"Ninth. It is contended by the attorney for the defendants that, in order for the plaintiff to recover, it was necessary for him to make a tender of the amount received by him. This question does not appear in either the complaint or answer, and therefore should not be considered by the court; and, even if this question had been properly pleaded, it is well settled that an infant need not return the consideration if he has squandered or wasted it. Brewster on Conveyancing, § 321; Craig vs Van Bebber, 100 Mo. 584, 13 S. W. 906, 18 Am. St. Rep. 569.

"Tenth. That an act of Congress of June 30, 1902 (32 Stat. 500, c. 1323), entitled 'An act to ratify and confirm a supplemental agreement with the Creek tribe of Indians, and for other purposes,' in the first part of section 16 (page 503) thereof, reads as follows: 'Lands allotted to citizens shall not in any manner whatever or at any time be encumbered, taken, or sold to secure or satisfy any debt or obligation nor be alienated by the allottee or his heirs before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior.' And further on in the same section it states: 'Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity.' Such law is still in force, except as modified by another act of Congress (Act April 21, 1904, c. 1402, 33 Stat. 204) which in part reads as follows: 'All the restrictions upon the alienation of lands of all allottees of either of the five civilized tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed.' It was under this act

that the defendants sought to purchase from the plaintiff his allotment; but it expressly excepts minors—the plaintiff.

"Eleventh. I find, therefore, that the plaintiff, Perry Colbert, was, at the time of the execution of the deed shown in item 1 of this report, a minor under the age of 21 years, and that by act of Congress of June 30, 1902, hereinbefore mentioned, and which was not changed, so far as this plaintiff is concerned, by the act of Congress of April 21, 1904, hereinbefore mentioned, said deed is absolutely void, and not susceptible of ratification, and of no effect, except to cloud the title of the plaintiff.

"I therefore recommend that the said deed in controversy herein be declared null and void and of no effect, and that the defendant R. J. Alfrey be required to execute a quit-claim deed to the plaintiff, Perry Colbert, reconveying said premises back to said plaintiff, in order to clear plaintiff's title to said premises, and that a decree be made and entered accordingly. And I further recommend that the receiver appointed herein be ordered to pay into court the amount in his hands as such receiver, less his expenditures and his reasonable compensation for his services as such receiver.

"Respectfully submitted this 12th day of December, A. D. 1905.

"Peter Deichman,

"Special Master in Chancery Aforesaid."

On the same day, the 21st day of December, 1905, upon motion of defendants' attorneys, the order of reference of the supplemental answer herein to Special Master Peter Deichman, is set aside, and the supplemental answer of the defendants is referred to Thomas A. Sanson, master in chancery, to which the plaintiff at the time excepts. On the 22d day of December, 1905, the defendants file 20 exceptions to the report of the master heretofore filed herein. On the 4th day of May, 1906, Master in Chancery Thomas A. Sanson files his report, as follows:

"Findings of Fact. From the testimony of the said witnesses I find the facts herein to be as follows: I find that since the institution of this suit, and since the said Perry Colbert attained his majority, he attempted to ratify the original deed herein, and executed another deed to the defendant Carl for a consideration of $5. I find that this subsequent deed is an attempt made by the parties to this suit to ratify the former deed, which was executed and delivered by the minor during his minority.

"Conclusions of Law. From the foregoing findings of fact I conclude that such attempted ratification on the part of the minor is absolutely void, under the act of Congress approved June 30, 1902, which provides, amongst other things, that 'any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph, shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity.'

"Recommendations. I therefore reommend that the deed set out in the plaintiff's original bill of complaint herein and the deed set out in the defendants' supplemental answer herein be canceled by the court and held for naught, and that the defendants be required to reconvey the same to the plaintiff, Perry Colbert.

"All of which is respectfully submitted.

"Thomas A. Sanson,

"Master in Chancery."

On the 5th day of May, 1906, the plaintiff by leave of court filed a supplemental bill, and alleges and shows to the court that at the time this action was instituted said Perry Colbert was a minor under the age of 21; that he has since become an adult over the age of 21; that said Perry Colbert is of unsound mind and incompetent to transact his own business and protect his own interest; that he has no property except his allotment as a Creek freedman in the Creek Nation, which

consists of 160 acres of land lying adjacent to the town of Inola; that plaintiff executed a deed to the defendant Alfrey for 120 acres of said land for the grossly inadequate consideration of $550, when said land was then worth the sum of $2,700; that after the special master found from the evidence that plaintiff was a minor at the time he executed the said deed to defendants, defendants procured from him another deed, pretending to convey the said 120 acres of land, for the sum of $5; that said deed was an attempt upon the part of defendants to procure from plaintiff a ratification of his deed executed and delivered to them while he was a minor; that both of said deeds are void; that plaintiff has no other property except his homestead, which he has leased since the commencement of this suit for a term of five years for the sum of $10; that defendants know that plaintiff is poor and ignorant, and absolutely incompetent to transact his own business and protect his rights; and that the consideration paid plaintiff by defendants is a grossly inadequate consideration, notwithstanding which plaintiff alleges that the defendants are seeking and will continue to try to get the title and possession of said property from plaintiff. He prays that the court appoint the plaintiff's father, James Colbert, or some honest white man, as guardian for plaintiff, said Perry Colbert, to take charge of said allotment; to cancel said deeds and restore possession of said property to the guardian of plaintiff; that defendants and their agents be perpetually enjoined from interfering with the said property or the possession thereof; and for costs.

On same day defendants file motion to dismiss this cause of action, as follows:

"(1) Because Perry Colbert is over 21 years of age and is not prosecuting this cause of action in his own name, but by James Colbert as his next friend. (2) Because James Colbert has no legal authority to prosecute this suit as the next friend of Perry Colbert, who is now over 21 years of age."

And on the same day the defendants file exceptions to the master's report, as follows:

"Exceptions to Master's Report. Come the defendants, R. J. Alfrey and G. D. Carl, and except to the master's report filed in this cause on the 4th day of May, 1906, for the following reasons, to wit: (1) The master erred in holding that the second deed made by plaintiff to the defendant was void under the act of Congress approved June 30, 1902. (2) The master erred in holding that the act of Congress approved June 30, 1902, has anything to do with the validity or invalidity of the deed executed by the plaintiff in this cause. (3) The master erred in recommending that the original deed set out in plaintiff's original bill of complaint herein should be canceled, as this question was not referred to him. (4) The master erred in holding that the deed set out in the supplemental answer herein should be canceled. (5) The master erred in not holding that said deed set out in - defendants' supplemental answer conveyed a good title to the defendant R. J. Alfrey."

On the 23d day of July, 1906, the court, being fully advised in the premises, doth render decree, to which decree both plaintiff and defendants at the time excepted. On the 25th day of July, 1906, a decree heretofore rendered is filed, which is as follows:

"Decree. On this the 23d day of July, 1906, came on to be heard the above-entitled cause, and thereupon comes the plaintiff, by his solicitor, Robert F. Blair, and the defendants, by their solicitors, De Roos Bailey and Charles G. Watts, and thereupon this cause was submitted to the court upon the complaint of plaintiff, filed herein June 28, 1904, and the supplemental bill, filed May 5, 1906, the answer of defendants, filed herein December 14, 1904, the supplemental answer filed December 15, 1905, the report of Peter Deichman, special master, filed herein December 21, 1905, the report of Thomas A. Sanson, master in chancery, filed herein May 4, 1906, and

the exceptions of the defendants thereto, together with all the evidence taken in this case. The court. having heard and fully understood the same. and having heard the argument of counsel, and being well and fully advised, does find: That plaintiff, Perry Colbert, is a citizen of the Creek Nation, being a freedman enrolled upon the freedman roll thereof, and as such he was the owner of an allotment described as the south half of the northwest quarter, less .85 acres occupied as right of way by the Kansas and Arkansas Valley Railroad, and lots 5 and 6, in section 4, township 19 north, range 17 east of the Indian meridian, the same being 120.24 acres, lying adjacent to the town of Inola, Indian Territory; that on the 25th day of April, 1904, defendants procured from plaintiff a deed with covenants of general warranty to the above-described property, which deed was taken in the name of defendant R. J. Alfrey; that at the time said deed was made plaintiff was a minor, under the age of 21; that after the filing of the special master's report herein defendants took from plaintiff a second deed to said property, which deed the court finds was executed after plaintiff became of age, and was intended to be, and was in fact, a ratification of his first deed given to defendant Alfrey as aforesaid. The court further finds that plaintiff was a minor at the time the first deed was executed, but that he had arrived at his majority at the time the second deed was executed; that at the time the second deed was executed there was no other consideration than the amount paid for the first deed, except $5. The court further finds that plaintiff, at the time of executing the first and second deeds, was inexperienced; that his education and training was limited; that plaintiff was of weak and feeble mind, and, although not insane, his case comes within the category where his property should be placed in the hands of a curator; that the consideration paid plaintiff by defendants was wholly inadequate. It is therefore ordered, adjudged, and decreed by the court that both the deeds of conveyance above

described be, and the same are hereby, canceled, set aside, and held for naught, and that the defendants are hereby perpetually enjoined from disposing of any of the land above described, or any part thereof; that the plaintiff, Perry Colbert, refund to the defendants, within one year from the date thereof, all moneys paid to him for and on account of the purchase of said lands, which the court finds to be five hundred and fifty-five dollars ($555.00), with interest at the rate of 6 per cent. per annum from the date of the payment thereof, for which defendants shall have a lien upon the lands of the plaintiff for the sums of money; that upon the payment of the said sums of money, together with the interest as aforesaid, by the plaintiff, Perry Colbert, the defendant R. J. Alfrey will make, execute, and deliver to plaintiff, Perry Colbert, or his heirs, or assigns, or legal representatives, a quitclaim deed for the above described premises.     The court further orders that all costs of this action still due shall be paid equally by the plaintiff and the defendants, each paying one-half.

"Louis Sulzbacher,

"Judge of the United States Court, Western District, Indian Territory."

On the 31st day of October, 1906, appellants file prayer for appeal, which is allowed, and 18 assignments of error, and appeal bond.   On the 26th day of October, 1906, plaintiff filed petition for appeal, which was allowed, and filed cross-assignment of errors, and the case was brought to this court by appeal.

*Chas. G. Watts, L. B. Fant,* and *De Roos Bailey,* for appellants.

*Robert F. Blair, Sol.,* for appellee.

TOWNSEND, J. (after stating the facts as above).   The appellants have filed 20 assignments of error, as follows:

"(1)   The court erred in not dismissing plaintiff's complaint for want of equity.

"(2)   The court erred in not holding that the amount of money paid by defendants to plaintiff when the first deed was executed, taken in connection with the amount paid when the second deed was executed, constituted a good consideration for the execution of said second deed.

"(3)   The court erred in not sustaining defendants' exceptions to the fifth finding of the special master, which is as follows:   'That the preponderance of the testimony goes to show that the plaintiff was born the latter part of March, 1884, and was 20 years old at the time he executed the deed sought to be set aside by this action, and at the time of the filing of the complaint herein.'

"(4)   The court erred in not sustaining defendants' exceptions to special master's seventh finding of fact, which is as follows:   'That the price paid by the defendants, $550, for said premises, is grossly inadequate, is shown by a preponderance of the evidence.   G. D. Carl, one of the defendants, and who was to have one-half of the profits, testifies that he had sold the said premises for $2,700, and was stopped from completing said sale by the bringing of this suit, and that this was within two months after the purchase by the defendant R. J. Alfrey from the plaintiff, and that there had been no improvements put on said premises during that time; and the evidence does not show that the premises had materially enhanced in value.'

"(5)   The court erred in not sustaining defendants' exception to the ninth finding of fact of the special master, which is as follows:   'It is contended by the attorney for the defendants that, in order for the plaintiff to recover, it was necessary for him to make a tender of the amount received by him.   The question does not appear in either the complaint or answer, and therefore should not be considered by the court; and, even if this question had been properly pleaded, it is well settled that an infant need not return the consideration, if he has squandered

or wasted it. Brewster on Conveyancing, § 321; Craig vs Van Bebber, 100 Mo. 584, 13 S. W. 906, 18 Am. St. Rep. 569.

"(6) The court erred in not 'sustaining defendants' exception to the eleventh finding of fact of the special master, which is as follows: 'I find that the plaintiff, Perry Colbert, was at the time of the execution of the deed shown in item 1 of this report, a minor under the age of 21 years, and that by act of Congress of June 30, 1902, hereinbefore mentioned, and which was not changed, so far as this plaintiff is concerned, by the act of April 21, 1904, hereinbefore mentioned, said deed is absolutely void, and not susceptible of ratification, and of no effect, except to cloud the title of the plaintiff.'

"(7) The court erred in not sustaining defendants' exception to the recommendations of the special master, which are as follows, to wit: 'I therefore recommend that the said deed in controversy herein be declared null and void and of no effect, and that the defendant R. J. Alfrey be required to execute a quitclaim deed to the plaintiff, Perry Colbert, reconveying said premises back to said plaintiff, in order to clear plaintiff's title to said premises, and that a decree be made and entered accordingly.'

"(8) The court erred in not sustaining defendants' exception to the finding of the master in chancery, in finding that the second deed made by plaintiff to defendants was an attempt to ratify the former deed, which was delivered during the minority of the plaintiff, and was void, which finding is as follows, to wit: 'I find that this subsequent deed is an attempt made by the parties to this suit to ratify the former deed, which was executed and delivered by the minor during his minority.'

"(9) The court erred in not sustaining defendants' exception to the conclusion of the master in finding that said second deed was an attempt to ratify the prior deed, which was void, which conclusion is as follows, to wit: 'From the

foregoing findings of fact I conclude that such attempted ratification on the part of the minor is absolutely void, under the act of Congress approved June 30, 1902, which provides, among other things, that "any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity." '

"(10)    The court erred in finding for the plaintiff in the case, in view of the fourth finding of the fact of the special master, which is as follows:    'That the evidence offered herein is very uncertain, indefinite, and unsatisfactory on every material matter; that the age of the plaintiff is the most important question involved herein.'

"(11)    The court erred in finding in its decree that the second deed taken by the defendants was a ratification of the first deed, which finding is as follows, to wit:    'That after the filing of the special master's report herein defendants took from plaintiff a second deed to said property, which deed the court finds was executed after plaintiff became of age, and was intended to be, and was in fact, a ratification of his first deed, given to defendant Alfrey as aforesaid.'

"(12)    The    court erred in its decree in finding that the plaintiff was a minor at the time the first deed was executed, and in not finding that at the time the second deed was executed the $550 paid at the time the first deed was executed and $5 paid at the time of the execution of said second deed gave defendants a good title to the land, which said finding of fact is as follows:    'The court further finds that plaintiff was a minor at the time the first deed was executed, but that he had arrived at his majority at the time the second deed was executed; that at the time the second deed was executed there was no other consideration than the amount paid for the first deed, except $5.'

"(13) The court erred in finding that the plaintiff, at the time of the execution of the deeds, came within that class where property should be placed in the hands of a curator, and in holding that the amount paid plaintiff by defendants was wholly inadequate, which finding is as follows, to wit: 'The court further finds that the plaintiff, at the time of executing the first and second deeds, was inexperienced; that his education and training was limited; that plaintiff was of weak and feeble mind, and, although not insane, his case comes within the category where his property should be placed within the hands of a curator; that the consideration paid plaintiff by defendants was wholly inadequate.'

"(14) The court erred in rendering its decree in said case, which is as follows: 'It is therefore ordered, adjudged, and decreed by the court that both the deeds of conveyance above described be, and the same are hereby canceled, set aside, and held for naught, and that the defendants are hereby perpetually enjoined from disposing of any of the land above described, or any part thereof; that the plaintiff, Perry Colbert, refund to the defendants, within one year from the date thereof, all moneys paid to him for and on account of the purchase of said lands, which the court finds to be five hundred fifty-five dollars ($555.00), with interest at the rate of 6 per cent. per annum from date of the payment thereof, for which defendants shall have a lien upon the lands of the plaintiff for the sums of money, together with the interest aforesaid, by the plaintiff, Perry Colbert the defendant R. J. Alfrey will make, execute, and deliver to plaintiff, Perry Colbert, or his heirs, or assigns, or legal representatives, a quitclaim deed for the above described premises.'

"(15) The court erred in rendering a decree independent of the findings of the master and special master, and ignoring those findings.

"(16) The court erred in not sustaining defendants'

exception to the special master's report allowing in evidence the affidavit of Alec Keys and Will Ross.

"(17) The court erred in finding for the plaintiff upon the evidence introduced, which was uncertain, indefinite, and unsatisfactory upon every material allegation, even according to the fourth finding of the special master, which is as follows: 'That the evidence offered herein is very uncertain, indefinite, and unsatisfactory on every material matter; that the age of the plaintiff is the most important question involved herein.'

"(18) The court erred in not holding that the representations made by him, at the time the first deed was executed, that he was of age, estopped him from denying that he was of age at that time.

"(19) The court erred in not holding that the plaintiff did not come into court with clean hands, as the proof shows that at the time the first deed was made he represented himself to be of age.

"(20) The court erred in not holding that the second deed, executed after plaintiff was of age, without any fraud or undue influence on part of defendants, gave defendants a good title, regardless of the question of age of plaintiff at the time of the execution of the first deed."

But appellants say: "We confidently submit this cause upon the propositions contained in the recapitulation of said assignments of error, under five different heads, as follows: (1) That the weight of the evidence shows that plaintiff was of age when the first deed was executed, and that the consideration paid him was adequate. (2) That there is no equity in the complaint of plaintiff, because he did not return or offer to return the consideration paid him by defendants, and for this reason the court should have dismissed the complaint. (3) That there was no equity in complaint of plaintiff, because the proof shows that the sale was made as a consequence of false

representation as to his age made by plaintiff to defendants, and that therefore he did not and could not come into a court of equity with clean hands. (4) That, if the first deed was void at time of its execution on account of plaintiff's minority, he subsequently ratified or affirmed the same after he became of age by executing the second deed. (5) That, if. the first deed could not be ratified or affirmed, the second deed conveyed title as an original conveyance; that the $550 paid when first deed was executed, together with the $5 paid when the second deed was executed, made a good and sufficient consideration for the execution of the second deed; that there is no finding of master or court in the case showing there was fraud or undue influence used to induce plaintiff to execute second deed; and that, if the other points should be resolved against appellants, on this one alone the court should have rendered decree for them."

Appellants first make a statement of the testimony by the different witnesses, and an argument that from that testimony the conclusion of the special master, Peter Deichman, that Perry Colbert was a minor, was incorrect. In his fourth finding the special master says "that the evidence offered herein is very uncertain, indefinite, and unsatisfactory on every material matter; that the age of the plaintiff is the most important question involved herein." And. for his fifth finding the special master states the following: "Fifth. That the preponderance of the testimony goes to show that the plaintiff was born the latter part of March, 1884, and was 20 years old at the time he executed the deed sought to be set aside by this action, and at the time of the filing of the complaint herein. The testimony of Gabriel Jamison. who principally raised the plaintiff, what little raising he got, and who seems to be a citizen of the Creek Nation of more intelligence than ordinary, fixes the age of the plaintiff by one of his own children. He also explains why the record in the Hawes Commission shows

the plaintiff's age to have been 18 on June 16, 1901." We have examined the entire testimony and record in this case, and must concur in the statement of the special master that "the evidence offered herein is very uncertain, indefinite, and unsatisfactory on every material matter," and in view of the fact that the master has found by a preponderance of the testimony that Perry Colbert was a minor at the time of the execution of the deed, in which finding the court concurs, we do not feel at liberty to interfere with the conclusions arrived at by both the master and the court. It thus having been determined that Perry Colbert was a minor, we find that the act of Congress of June 30, 1902, entitled "An act to ratify and confirm a supplemental agreement with the Creek tribe of Indians and for other purposes," in the first part of section 16 thereof, reads as follows: "Lands allotted to citizens shall not in any manner or at any time be encumbered, taken or sold to secure or satisfy any debt or obligation, nor be alienated by the allottee or his heirs, before the expiration of five years from the date of the approval of this supplemental agreement, except with the approval of the Secretary of the Interior." Under this act an allottee was not permitted to alienate his allotment until the expiration of five years from June 30, 1902. And in the same section it is further provided: "Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph, shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity." This sixteenth section is still in force, except as modified by another act of Congress of April 21, 1904, which provides: "All the restrictions upon the alienation of lands of all allottees of either of the five civilized tribes of Indians, who are not of Indian blood, except minors, are, except as to homesteads, hereby removed." It thus appears that if Perry Colbert was a minor, and under the act of April 21, 1904, the restrictions

were removed, he, being a minor, was an exception, and his restrictions · were consequently not removed; and under the provisions of section 16, above quoted, his conveyance, made while a minor, was absolutely void.

The defendants filed a supplemental answer on the 15th day of December, 1905, stating that since the filing of their original answer Perry Colbert, on the 21st day of November, 1905, had executed another warranty deed to the defendant Alfrey, and that at the time of the execution of this warranty deed Perry Colbert was over 21 years of age. It appears from the record that this supplemental answer was withdrawn from the special master, Peter Deichman, and referred to the regular master, Thomas A. Sanson, who, on the 4th day of May, 1906, files his report, and states as follows: "I find that since the institution of this suit, and since the said Perry Colbert attained his majority, he attempted to ratify the original deed herein, and executed another deed to the defendant Alfrey for a consideration of $5. I find that this subsequent deed is an attempt made by the parties to this suit to ratify the former deed, which was executed and delivered by the minor during his minority. From the foregoing findings of fact I conclude that such attempted ratification on the part of the minor is absolutely void, under the act of Congress approved June 30, 1902, which provides, amongst other things, that 'any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph, shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity' "—and recommends that the deed set out in the plaintiff's original bill of complaint herein, and the deed set out in the defendants'· supplemental answer herein, be canceled by the court and held for naught, and that the defendants be required to convey the· same to plaintiff, Perry Colbert. But appellants, say: ";It will be seen that section 16 is divided into two paragraphs. The last par-

agraph refers to homesteads exclusively, and, as the land in controversy in this suit is not the homestead of the allottee, that doctrine would not apply in this case. The provision referred to provides 'that any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph, shall be absolutely void and not susceptible of ratification,' etc. It is clear, we think, that the provision does not apply to the first paragraph of section 16." But the appellee insists that it. applies to all lands allotted to any of the citizens of the Creek Nation, and that the finding of Thomas A. Sanson, master in chancery, in this respect, was correct, and says: "Commonly speaking, there are two paragraphs in this section, but in a legal sense the entire section constitutes a paragraph. Webster defines 'paragraph' as follows: 'A distinct part of a discourse or writing; any portion of a section of writing or chapter which relates to a particular point, whether consisting of one sentence or many sentences.' The same authority defines 'section' as follows: 'In books and writing, a distinct part or portion; the subdivision of a chapter; the division of a law or other writing or instrument. In laws a section is sometimes called a paragraph or article.' " And he further insists that all conveyances in violation of said section should be void and not susceptible of ratification, and that no rule of estoppel should ever prevent the assertion of its invalidity, and that the restricted and technical construction placed upon it by appellants is absurd; for why should Congress provide against the ratification of void contracts and conveyances of homesteads, consisting of 40 acres of land, and permit the ratification of void contracts and conveyances of 120 acres of surplus land? The clause. "Any agreement or conveyance of any kind or character violative of any of the provisions of this paragraph shall be absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity," is a separate and independent clause in said section 16, and in

our judgment it applies to the attempted ratification of any of the deeds prohibited in said section.

It is the contention of the appellants that Perry Colbert, the appellee, sold his land by reason of a false representation to appellants as to his age, and insists that he who comes into a Court of Equity must come with clean hands, and states that in Pomeroy's Equity (volume 2, § 945) it is said: "The incapacity of infants to enter into binding contracts is the same in equity as in law; but such contracts are generally voidable only, and may therefore be ratified after the infant attains his majority. Fraud, however, will prevent the disability of infancy from being made available in equity. If an infant procures an agreement to be made through false and fraudulent representations that he is of age, a Court of Equity will enforce his liability as though he were adult, and may cancel a conveyance or executed contract obtained by fraud." The special master in his report says: "It is contended by the attorney for the defendants (appellants) that in order for the plaintiff to recover it was necessary for him to make a tender of the amount received by him. This question does not appear in either the complaint or answer, and therefore should not be considered by the court." The special master further finds that the appellee was very ignorant and inexperienced in all business matters, and that the price paid by the defendants, $550, for said premises, is grossly inadequate is shown by the preponderance of the evidence. G. D. Carl, one of the defendants, who was to have one-half of the profits, testifies that he had sold the premises for $2,700, and was stopped from completing said sale by the bringing of this suit, and that this was within two months of the purchase by the defendant Alfrey from the plaintiff, and that there had been no improvements put on the premises during that time, and the evidence does not show that the premises had materially enhanced in value; and he further says that fraud has not been conclusively

proved, but that there is some very strong evidence to support
it.   Pomeroy's Equity, § 927, states: "Although the actual
cases in which a contract or conveyance has been canceled on
account of gross inadequacy merely, without other inequitable
incidents, are very few, yet the doctrine is settled, by a con-
sensus of decisions and dicta, that even in the absence of all
other circumstances, when the inadequacy of price is so gross
that it shocks the conscience and furnishes satisfactory and
decisive evidence of fraud, it will be a sufficient ground for
canceling a conveyance or contract, whether executed or execu-
tory.   Even then fraud, and not inadequacy of price, is the
true and only cause for the interposition of equity and the
granting of relief."   And section 928 is as follows:   "*  *  *  *
When the accompanying incidents are inequitable and show bad
faith, such as concealments, misrepresentations, undue advant-
age, oppression on the part of the one who obtains the benefit,
or ignorance, weakness of mind, sickness, old age, incapacity,
pecuniary necessities, and the like, on the part of the other,
these circumstances, combined with inadequacy of price, may
easily induce a court to grant relief, defensive or affirmative.   It
would not be correct to say that such facts constitute an absolute
and necessary ground for equitable interposition.   They operate
to throw the heavy burden of proof upon the party seeking to
enforce the transaction or claiming the benefits of it, to show
that the other acted voluntarily, knowingly, intentionally, and
deliberately, with full knowledge of the nature and effects of
his acts, and that his consent was not obtained by any oppression,
undue influence, or undue advantage taken of his condition,
situation, or necessities.   If the party upon whom the burden
rested should succeed in thus showing the perfect good faith
of the transaction, it would be sustained; if he should fail,
equity would grant such relief, affirmative or defensive, as
might be appropriate."   And in section 947: "By the same
analogy, where a person is illiterate or ignorant of the nature

and extent of his own rights, or ignorant of the nature of the transaction in which he is engaging, and acts without professional or other advice, and advantage is taken of his condition to obtain a conveyance or contract upon an inadequate consideration or otherwise unfair, equity will relieve by setting it aside or defeating its enforcement. The relief is granted on the ground that there was not an intelligent and free consent."

It is contended by the appellants that the appellee misrepresented his age, and perpetrated a fraud in inducing them to pay $550 for the land in controversy. On the other hand, the appellee contends that the money paid to him while a minor has been wasted and squandered, and that consequently he should not be compelled to return the same. The court below found that plaintiff at the time of executing the first and second deeds was inexperienced; that his education and training was limited; that plaintiff was of weak and feeble mind, and, although not insane, his case comes within the category where his property should be placed in the hands of a curator; that the consideration paid by defendants was wholly inadequate. But, in view of the misrepresentations made by the appellee as to his age, we think the court below very properly ordered that the appellee should refund to the defendants, within one year from the date thereof, all moneys paid to him for and on account of the purchase of said lands, which the court finds to be $555, with interest at the rate of 6 per cent. per annum.

The last contention of appellant is: "That, if the first deed could not be ratified or affirmed, the second deed conveyed title as an original conveyance; that the $550 paid when first deed was executed, together with the $5 paid when the second deed was executed, made a good and sufficient consideration for the execution of the second deed." But if the $550 was the consideration of the first deed, which the master and court found to be void, then how can that be a consideration in the

second deed, except it be to ratify the void deed? The only consideration moving between the parties at the time of the execution of the second deed was $5, and the including of the $550 in the consideration of the second deed makes conclusive the fact that the second deed was an attempt to ratify the first deed, which had been declared to be void.

In our judgment, the court below, in its decree, arrived at a just and equitable determination of the facts of this case, and his judgment is therefore affirmed.

GILL, C. J., and CLAYTON and LAWRENCE. JJ., concur.