E. B. DEAN & CO. ET AL., APPELLANTS, *v.* L. LAWHAM ET AL., RESPONDENTS.

CONTEMPORANEOUS AGREEMENTS.—Two contemporaneous written agreements, between the same parties and concerning the same subject-matter, are to be construed as one contract.

STANDING TIMBER—POSSESSION AFTER SALE.—Where the owner of standing timber sells it, but by the terms of the contract of sale, he is to cut the timber into saw-logs and deliver them to the vendee at his mill, the possession of the property remains in the vendor after the sale.

PLEDGE, BY ONE IN POSSESSION.—The lawful possessor of personal property has a right to pledge it to another who has done work upon it to secure

payment for his services, and the pledgee can hold the same until his claim is satisfied.

IDEM—DELIVERY, TO WHOM MADE.—The bailee of goods, held in pledge, is bound to deliver them back to the person from whom he recovered them when his claim is satisfied.

*Per* MR. JUSTICE BOISE, dissenting:

CONTEMPORANEOUS AGREEMENTS—ONE CONTRACT, WHEN.—Two contemporaneous agreements between the same parties and concerning the same subject-matter are to be taken together and construed as one contract only so far as the last contract refers to the first, and by its terms modifies it, or when, either from the writings themselves or from extrinsic evidence, it appears that in fact the two agreements are parts of one transaction.

LIEN, CAN ONLY BE GIVEN BY OWNER.—The general rule is that the right of lien must be given by one having the right of property. The bailee of property may employ workmen to labor upon the same, but he can not make the bailor responsible for his contracts with such workmen.

JUDGMENT—AMOUNT OF.—Where the bailee of personal property having a lien thereon is adjudged to have a return of the property, or an alternative money judgment in case a return can not be had, such alternative judgment should only be for the amount of his lien.

APPEAL from Coos County.

*Strahan & Burnett and S. H. Hazard,* for appellants.

*W. W. Thayer,* for respondents.

By the Court, KELLY, C. J.:

This was an action for the recovery of personal property brought by the appellants against the respondents, for the possession of nine hundred and twelve fir logs of the value of three thousand seven hundred dollars, in which the appellants, who were the plaintiffs below, claimed that they were lawfully possessed of the same.

This was denied by the defendants, who claimed that they were lawfully possessed of the property and entitled to its return.

The case was tried by the court by consent of the parties without a jury, and the following findings of fact were made: That the timber from which the logs in dispute were cut and manufactured, originally was the property of one Charles Horner, who sold it to one James Whybock, as it grew upon

his land; Whybock having the right to remove it within two years from January 6, 1876.

That thereafter, the said James Whybock, executed, and delivered to the appellants the following writing:

"Know all men by these presents, that I, James Whybock, of Coos county, Oregon, for and in consideration of the payment and terms hereinafter mentioned, have bargained and sold, and by these presents do sell and convey unto E. B. Dean & Co., all the timber formerly owned by Charles Horner, and purchased by me from said Charles Horner on the eighth day of December, 1875. This sale is made for and in consideration of fifty cents per thousand feet of logs, cut and manufactured from said timber; said sum to be placed to my credit at the time of delivery of said logs at said mill; provided, and this conveyance is upon the condition that said E. B. Dean & Co. shall cut and remove said timber within two years from this date; to have and to hold the said property unto said E. B. Dean & Co. and assigns forever.

"In testimony whereof, etc."

That thereafter, upon the same day, the same parties entered into the following agreement:

"This agreement, made this sixth day of January, A. D. 1876, by and between James Whybock, of the first part, and E. B. Dean & Co., of the second part, witnesseth: That said party of the first part, for and in consideration of the terms herein written, agreed to cut and manufacture into saw-logs and deliver to the party of the second part, at their mill in Marshfield, all the timber belonging to the said party of the first part on the lands of Charles Horner, in Coos county, Oregon, or as much of said timber as said party of the first part can reasonably cut and deliver within the period of two years from the date of this agreement. Said party of the second part hereby agrees to pay for the work and labor herein agreed to be performed by the party of the first part the sum of four dollars and fifty cents per thousand feet of logs, cut and delivered as aforesaid.

"The party of the second part further agree that they will furnish a reasonable amount of supplies and money

to enable said party of the first part to carry on the work aforesaid, the money and supplies advanced to be received by the party of the first part in part payment for such work.

"In witness whereof, etc."

That the logs described in the complaint were cut and manufactured by the said James Whybock from the timber described in the written agreements set forth; that the respondents herein were employed by the said James Whybock, as laborers, in cutting and putting in the water the said saw-logs, and did furnish their labor in cutting and putting in the water said logs; that there was due from Whybock for said services, and unpaid on the fifth day of October, 1877, the sum of five hundred and eighty-nine dollars and ninety-eight cents; that on said fifth day of October, A. D. 1877, Whybock delivered to the respondents the possession of said logs, to retain them as a pledge for the payment to them of said sum of five hundred and eighty-nine dollars and ninety-eight cents; that at the time the respondents performed said services, and at the time when they took possession of said logs, they had no knowledge or notice of the written agreements referred to, and in good faith believed that the timber from which they were cut was the property of Whybock.

As conclusions of law the court found: That as against the respondents the appellants were not the owners or entitled to the possession of said logs; that the respondents were entitled to the possession of them and were entitled to a judgment for the return to them of the logs or for the sum of three thousand seven hundred dollars, the value thereof, if a return could not be had, and judgment was entered accordingly. The errors assigned by appellants are substantially as follows:

1. That from the facts found by the court, the appellants were the owners and entitled to the possession of the logs; 2. That from the facts found, respondents were not entitled to the possession of the logs; 3. That from the facts found, if a return of the property could not be had, the judgment in favor of the respondents should have been for five hun-

dred and eighty-nine dollars and ninety-eight cents, and not for three thousand seven hundred dollars, the value of the logs.

The appellants claim that by the first written agreement, set forth in the findings of the court, dated January 6, 1876, James Whybock sold and delivered to them the growing timber, which he had purchased from Charles Horner, and out of which the logs in controversy were made, and that by virtue of such sale they received possession of the same. They further claim that such possession was not re-transferred to Whybock by the second agreement set forth in the findings of the court, and consequently he could not legally give possession to the respondents.

It is unnecessary for us to consider what would be the legal effect of the first agreement, standing by itself, as between the parties to it. The two contracts being contemporaneous, and relating to the same subject-matter, must be construed together as constituting but one agreement. (2 Par. on Con. 503; *Cornell* v. *Todd,* 2 Denio, 130; *Craig* v. *Wells,* 1 Kernan, 315; *Makepeace* v. *Harvard College,* 10 Pick. 302; *Sibley* v. *Holden,* Id. 250; Chitty on Contracts, 89, note 1.)

When the two instruments in writing, dated January 6, 1876, are thus construed as forming one contract, the agreement is substantially as follows: Whybock sold to E. B. Dean & Co. all the timber which he purchased from Horner on the eighth day of December, 1875, in consideration of fifty cents per thousand feet of logs, to be cut and manufactured from the timber. Whybock, however, was to cut and manufacture the timber into saw-logs, and deliver them to E. B. Dean & Co. at their mill. He was to cut all the timber, or so much of it as he could reasonably cut and deliver within two years from the date of the agreement. E. B. Dean & Co. agreed to pay him four dollars and fifty cents per thousand feet of logs cut and delivered at their mill in Marshfield.

The possession of the timber, after these agreements were made, was clearly in Whybock. He was not, as claimed by appellant's counsel, in the custody of it merely as a servant

or hired man, employed by them to cut the timber into saw-logs. He could not be discharged by them at will, as a hired man could. He had the sole right to cut all the timber on the land; or so much as he was able to cut within two years. No other person could be employed by appellants to do the work, so long as Whybock fulfilled his agreement with them. He was by the terms of the contract to deliver the logs at their mill and to be paid four dollars and fifty cents per thousand feet for all the logs he should deliver to them. Delivery of property by one person to another presupposes that the one delivering it has the possession.. Delivery is defined to be the transmitting the possession of a thing from one person to another; and it only takes place in the sale of property, when nothing remains to be done by the seller as between him and the buyer.

Upon whom would the loss have fallen in case the logs had been destroyed before they were delivered by Whybock at E. B. Dean & Co's. mill? Clearly upon him. (Story on Bailments, sec. 427, a.) And if upon him, then he was in possession of them.

Having the exclusive right to cut the timber into saw-logs, he lawfully could and did employ the respondents to do it for him; and for their labor in so doing they had a lien upon the property on which their labor was bestowed. The possession of the logs was given by Whybock to respondents, on October 5, 1877, to be retained by them as a pledge for the payment of five hundred and eighty-nine dollars and ninety-eight cents due for their services. Independent of any statutory regulation, they had a right to retain this possession until the lien was discharged by a payment of the money due for their labor.

But it is claimed by the appellants that the judgment of the court below was erroneous in this; that if the property could not be returned, they were required to pay three thousand seven hundred dollars, the value thereof, instead of five hundred and eighty-nine dollars and ninety-eight cents, the sum due to respondents. We hold that there was no error in this respect.

The respondents received the possession of the logs from

Whybock, and they had no right upon the payment of their lawful demand to surrender that possession to any person other than the one from whom they received it. A bailee is bound to deliver the goods back to the person by whom he has been intrusted with the custody of them. (Story on Bailments, sec. 450; *Lyle* v. *Barker,* 5 Binney, 457; *Pomeroy* v. *Smith,* 17 Pick. 86.)

A bailee is bound to protect the rights of his bailor, as well as his own. He can not lawfully deliver the goods intrusted to him to one who is a stranger to the transaction, and thereby defeat any rights or lien which the bailor may have in the property committed to him.

It is claimed by appellants that the cases of *Single* v. *Barnard,* 29 Wis. 463; and *Warner* v. *Hunt,* 30 Wis. 200, support the position assumed by them, that the respondents are only entitled to a return of the property, or the value thereof, in case a return can not be had, to the extent of five hundred and eighty-nine dollars and ninety-eight cents. We do not consider the cases analogous to the one before this court.

The former was an action of replevin to recover a quantity of logs, brought by those claiming to be the owners and entitled to the possession against the sheriff, who had seized the logs by virtue of an execution in favor of a lumberman who had a lien upon them. It was held that the defendant had a right to hold the lumber to the amount of the execution in his hands to satisfy the lumberman's lien. The case in the 30 Wis. was an action of replevin for recovery of a cow detained by a poundmaster. The plaintiff in the case claimed that he was the owner and lawfully entitled to the possession of the animal.

The defendant in his answer denied the allegations in the complaint and gave notice that he claimed a lien for two dollars and fifty cents as poundmaster. The jury found for the defendant and that he was entitled to the possession of the property and assessed the value at forty dollars. Upon this verdict there was judgment that the defendant have a return of the property, which had been delivered to the plaintiff, or if return could not be had, that the defendant recover

from the plaintiff the value thereof, assessed at forty dollars. This was the judgment in the court below, and was reversed by the supreme court, on the ground that the defendant had a special property in the cow of only two dollars and fifty cents, and ought not therefore to have a judgment for forty dollars. These cases have no analogy to the one under consideration. In both of them the contest was between the owners of the property sought to be recovered as plaintiffs and persons having a special property as defendants. In neither of them was there an intervening claim paramount to that of the plaintiff as in the case before us. If the claim and lien of Whybock were out of the way, then the Wisconsin cases relied on by appellant's counsel would be analogous to this one. Whybock had a right to the possession of the logs as against E. B. Dean & Co., until they should be delivered at their mill. He had this right when he pledged them to the respondents, and it was neither destroyed nor lessened by giving them in pledge to his workmen. A bailee is bound not only to return the goods to the bailor when his demand is satisfied, but he is equally bound to defend the interests of the bailor in an action brought to recover the property by one not entitled to the possession of it. In the case of *Pomeroy* v. *Smith*, 17 Pick. 85, one Atkinson pledged certain goods to the plaintiff as collateral security for the payment of a debt due to him from Atkinson, and also for the indemnification of the plaintiff against certain liabilities incurred by him as surety for Atkinson. After the goods were delivered to the plaintiff, they were attached as the property of Atkinson, by the defendant, who was a constable, and taken from the possession of the plaintiff.

The defendant contended that if the plaintiff, upon the evidence, was entitled to a verdict, he should recover only such a sum in damages, as would discharge the debt due to him from Atkinson, and indemnify him against such liabilities. But the judge instructed the jury that if they should find a verdict for the plaintiff, he was entitled to recover damages to the full value of the goods so taken by defendant. The jury returned a verdict for the plaintiff and assessed damages in conformity with the instructions of the judge.

On appeal to the supreme court the judgment was affirmed. Shaw, C. J., delivering the opinion of the court said: "The judge ruled that the plaintiff was entitled to recover the value of the goods. The general rule is found on the consideration, that for all beyond the debt for which the goods are pledged, the pledgee is responsible to the pledgor."

So in the supreme court of Pennsylvania, it was held that a pawnee may recover the full value of goods, against a stranger, who takes them away, although they were pledged to him for less, being answerable to the pawnor for the excess. (*Lyle* v. *Barker*, 5 Binn. 457; Story on Bailments, sec. 352.)

The judgment is affirmed.

Mr. Justice Boise, dissenting:

The first instrument signed by James Whybock is a conveyance of the timber therein referred to, and had there been no other agreement made, the grantors, Dean & Co., would have had the right to at once commence cutting the timber and conveying it to their mill, where by the contract it was to be put to the credit of Whybock. It is not difficult to see why this clause was inserted in the contract. There must be some way of ascertaining the amount of the timber, and the most convenient place was at the mill where it could be measured, and an account taken by persons of experience in such business. It must have been the object of this agreement to secure this timber to Dean & Co. for the use of the mill. It is claimed that the second agreement modified this, and that the same are to be taken together and construed as one contract. So far as the last contract refers to the first, and by its terms modifies it, this is true, but no farther. This second writing is simply an agreement to cut this timber, and by its terms in no way modifies the contract of the sale of the timber, and does not refer to it in any manner, but it does say that said Whybock, who is to cut all the timber belonging to the said party (meaning Dean & Co.) on the lands of Charles Horner in Coos county, showing that the timber belonged to Dean & Co., which is an acknowledgment that Dean &

Co. owned the timber that had just been conveyed to them by the first instrument in question.    If Dean & Co. had immediately after the execution and delivery to them of the first instrument by Whybock made a contract with a third person in terms like the second instrument now under consideration, I think Whybock could not have questioned their ownership of the timber.   The first instrument had completely invested Dean & Co. with it; as much so as the sale of a field of corn by a written contract at fifty cents per bushel, the number of bushels to be ascertained when harvested, and in a condition to be measured.

This timber standing in the forest on the land was not in a condition to be measured so that the parties could determine the amount.   Dean & Co. were to pay for it at fifty cents per thousand feet.   The first contract, being in writing, was an executed contract so far as transferring the property was concerned, and put the grantee, Dean & Co., in possession of the timber; as much as the sale of a field of standing corn would put the purchaser in possession of it.   So far as the sale of the timber was concerned, it was complete on the execution and delivery of the written agreement or bill of sale; the seller had nothing more to do to complete the sale.   Dean & Co. were to cut the timber and ascertain the amount.   There was as complete a delivery of the thing sold as its nature would permit.   By this contract the timber was placed at the disposal of Dean & Co., and was so situated that Dean & Co. could begin at once to cut and remove it from the land, and this was a sufficient delivery in such a case.

But to return to the question whether these two contracts should be construed together as forming one contract, the rule laid down in the case of *Cornell* v. *Todd et al.*, 2 Denio, 130, which case is referred to and relied on as authority for construing the two writings before the court in this case as forming one agreement, is thus stated by Judge Bronson:

"Several deeds or other writings executed between the same parties at the same time, and relating to the same subject-matter, and so constituting parts of one transaction

should be read and construed together as forming parts of one agreement."

This is true, and it is not necessary that the instruments should refer to each other if in point of fact they are parts of a single transaction. But the learned judge in that case goes on to say, that "Until it appears that they are such, either from the writings themselves or by extrinsic evidence, the case is not brought within the rule." Now in this case there is no reference in either of these agreements to the other; nor are they shown by extrinsic evidence to relate to the same subject-matter. One is a bill of sale of a quantity of standing timber: the other is to manufacture that timber into saw logs, which are entirely distinct subjects, as much so as the sale of timber for a house and a contract to build the house. One is the sale of property, and the other is an agreement to work for certain hire. And further, I think these written agreements in their terms ignore the conclusion that they were to be parts of one transaction. For if it was the intention of the parties that Whybock was to furnish timber and deliver logs at the mill of Dean & Co., why did they not simply enter into an agreement that Whybock deliver to Dean & Co. all the logs on this land within two years at five dollars per thousand feet, to be paid for on delivery?

We must not suppose, without there is some reason, either apparent on the instruments or proven by the testimony, that these two instruments were made where one would have done better. We must give force and effect to both if we can. I think the fair import of these agreements is that Dean & Co., being the owners of a mill, and desiring to secure logs, bought this timber, and by the first agreement secured it to their use. Suppose they did, at the making of the first contract, intend that Whybock should have the contract to cut the timber and deliver it to them. They may, and probably did, judging from after developments, fear that he would not be able to deliver it; then, on his failure, they could have others perform this work which he was employed to do in the second contract. Such a construction will explain and give effect to both contracts, and

be in accordance with the prudent conduct of careful business men.

I will next consider the matter of the lien of L. Lawham *et al.* on the logs in question in this action. From the view I take of the rights of Dean & Co. to this timber, Whybock, by virtue of the second contract with Dean & Co., became as to them a bailee of work on the thing bailed, or, as it is defined by law writers, " the hire of work and service, or *locatio operis faciendi,* such as the hire of tailors to make clothes, or jewelers to set gems." (Story on Bailments, sec. 422.)

He was to take the timber of Dean & Co. and manufacture it into saw-logs and deliver them at their mill. Whybock was not obliged to part with possession of the logs until he was paid for his labor; that is, he had a lien on them for such labor. (Story on Bailments, sec. 440.) But when this lien was discharged by Dean & Co. by paying him for his work, then he was bound to deliver the logs to them, they being the owners, subject to this lien. In this kind of cases, if the property be destroyed while the work is being performed on it, without the neglect of the bailee, the loss falls on the bailor. (Id. sec. 437.)

The bailee in these cases, though he may employ others to assist him in his labor, can not make the bailor responsible for his contracts with such workmen. For a bailee is an agent with special authority, and can not delegate his powers so as to raise a priority of contract between his principal and his employees, so that those who work on the thing bailed must look to the bailee for their pay. (Story on Bailments, sec. 440; *Monk Hollingsworth* v. *Phineas Dow,* 19 Pick. 228.)

This last case cited is in principle identical with the one under consideration. In that case it appeared that Hollingsworth had purchased a machine in an unfinished state, and entered into a contract with one Nesbit, by which it was stipulated that Nesbit should finish the machine for nine hundred and fifty dollars, of which sum two hundred dollars were to be paid when the machine was finished and delivered, and the residue in six months afterwards, and that

28

the machine should be completed in ten weeks from the date of the contract. Nesbit, without the consent or knowledge of Hollingsworth, agreed with Dow to finish the machine. Dow took the machine to his shop for this purpose and did most of the work on the machine.

It appeared that during the progress of the work at Dow's shop, Hollingsworth, or his agent, came frequently to look at the machine, and occasionally spoke to Dow respecting it. It was held in that case that Dow had no lien on the machine. Nesbit being the bailee of Hollingsworth, under a contract to finish the machine, could not sub-let the contract so as to bind Hollingsworth. He had no authority to contract for Hollingsworth.

In that case Chief Justice Shaw said: "A lien is a proprietary interest, a qualified ownership, and, in general, can only be created by the owner or by some person by him authorized. In cases of innkeepers and a few others who are by law bound to give credit for the keeping of horses, it may well be held that the person putting up the horse at the innkeeper's stable shall be deemed the agent of the owner, whoever he is, so as to provide for his sustenance, and therefore the innkeeper may have a lien, though the horse be left by a person other than the owner. But the general rule is as above stated—that the right of lien must be given by one having the right of property; and I think there is no doubt that such is the rule unless it has been changed by our statute. I will now consider that subject. Section 13, page 655 of the code, provides that any person who shall make, alter, repair, or bestow labor on any article of personal property, at the request of the owner or lawful possessor, shall have a lien on such property. That statute would give a lien in a case like this; but it was repealed by a statute approved October 28, 1874.

Section 17 of this act provides that: Any mechanic, artisan or merchant, who shall make, alter or repair any article of personal property at the request of the owner or legal possessor of such property, shall have a lien * * * (Laws of 1874, p. 111.)

This is the only provision of the statute on this subject,

and the lien of the respondents in this case is not provided for, and I think does not exist under the statute or at common law.

The court below found that as against the defendants the plaintiffs, Dean & Co., were not the owners or entitled to the possession of the property. In this I think the court was wrong, for I think the proper construction of the written instrument purporting to convey this timber to Dean & Co. shows them to be the legal owners of the property, and I think also they were entitled to the possession as against the respondents.

But if they were not entitled to the possession as against the respondents, and had the finding of the court been correct, that the respondents had a valid lien on these logs to the amount of five hundred and eighty-nine dollars and ninety-eight cents, that was the amount and value of their special property in the logs.

In this case, where the court found and had before it, as on a special verdict, the value of the respondents' interest in the property, they were only entitled to a judgment for the value of that interest. I think in case where in an action by the general owner the defendant is adjudged in lawful possession by virtue of a lien and is adjudged to return the property, his alternative judgment for money in case return can not be had should be the amount of his lien; for all the value of the property above that belongs to the general owner, and the amount of the lien is the value of his special property, and no man is entitled to a judgment for more than belongs to him. (Story on Bailments, sec. 352; 7 Cowen, 670; *Warner* v. *Hunt*, 30 Wis. 200; 29 Id. 463.)