### *CARTER v. PRAIRIE OIL & GAS CO. *et al.*

No. 6386. Opinion Filed October 12, 1915.

Rehearing Denied October 10, 1916.

Dissenting Opinion October 10, 1916.

(160 Pac. 319.)

1. JURY—Suits in Equity—Quieting Title. A suit to clear title to 120 acres of land, part of her allotment, by a citizen of the Creek Nation, on the ground that her deed thereto was procured by fraud and was also executed in violation of section 19 of an act of Congress approved April 26, 1906 (chapter 1876; 34 Stat. 144) which provides: "And every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby declared void"—is, pursuant to Rev. Laws 1910, sec. 4994, properly triable

---

*Appealed to the Supreme Court of the United States.

by the court, subject to its power to order any issue or issues of fact tried by a jury.

2. **APPEAL AND ERROR—Presenting Questions in Trial Court—Mode of Trial.** Where, without objection; such cause is tried to a jury and a general verdict returned upon which a judgment was rendered and entered by the court as in a suit at law, **held,** that such was error; but, being uncomplained of in the trial court, it is too late to complain of it here for the first time.

3. **APPEAL AND ERROR—Disposition of Cause—Rendition of Judgment.** Where such is the state of the record, this court on appeal will consider the whole record and weigh the evidence, and, where the same is uncontroverted, render, or cause to be rendered, such judgment as the trial court should have rendered.

4. **INDIANS—Lands—Conveyances—Validity.** A citizen of the Creek Nation received $300 of the recited consideration of $3,600, and on July 2, 1907, prior to the removal of her restrictions, made, executed and delivered a deed to a part of her allotment, void under section 19 of an act of Congress approved April 26, 1906. At the same time she took back from the grantees therein their two promissory notes, one for $1,700, payable August 9, 1907, the other for $1,600, payable August 9, 1908, and agreed to meet them at the same place on August 9, 1907, which she did. There on that day, her restrictions in the meantime being removed by operation of law, they took up both notes, paid her the note for $1,700, and took from her another deed for the same land, which recited the same consideration, and that $2,000 of it was that day cash in hand paid, and executed and delivered to her their note for $1.600, payable one year thereafter. **Held,** that, although executed at different times, both deeds were evidence of or part of one and the same transaction, and should be construed together; that, the first deed being void as in fraud of the statute, not only in that for the making of which an agreement was entered into before the removal of restrictions, but in that a part of the consideration of the first entered into the consideration for the second deed, the taint of illegality in that deed tainted the second, and that both are void. **Held,** further, that, being void, the subsequent purchaser of the land took no title.

5. **CONTRACTS—"Agreement."** An "agreement" is a coming together of parties in opinion or determination; the union of two or more minds in a thing done or to be done; a mutual assent to do a thing.

6. **INDIANS—Lands—Restrictions on Alienation—"Transaction."** As "transaction" is derived from the Latin words **"trans,"** meaning across, and **"agere,"** to drive, evidence examined, and **held** that the transaction here involved was putting, or driving, across

the title to the land from plaintiff to the defendant grantees, and that the two deeds executed for that purpose were evidence of or part of that transaction, and should be construed together, not only to determine what the contract or agreement evidenced thereby was, but with what intent it was made.

(Syllabus by the Court.)

Kane, C. J., and Thacker, J., dissenting.

*Error from District Court, Creek County;*
*Wade S. Stanfield, Judge.*

Action by Annie Carter against the Prairie Oil & Gas Company and others. Judgment for defendants, and plaintiff brings error. Reversed and remanded, with directions.

*Fred M. Carter, Frank P. Smith,* and *Samuel W. Hayes,* for plaintiff in error.

*McDougal & Lytle,* for defendants in error.

TURNER, J. On January 4, 1914, in the district court of Creek county, Annie Carter, plaintiff in error, sued Senes W. Anthony, Charles H. Anthony, and Prairie Oil & Gas Company, defendants in error, to clear her title to 120 acres of land, her surplus allotment as a citizen of the Creek Nation, on the ground that a warranty deed, purporting to convey the same, made, executed, and delivered by her to the defendants Anthony, dated August 9, 1907, was: (1) Procured by fraud; and (2) was executed in violation of section 19 of an act of Congress, approved April 26, 1906, c. 1876 (34 Stat. at L. 144), which reads:

"And every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby declared void."

Aside from the allegations of fraud in procuring the deed, the petition substantially states that, before the re-

moval of her restrictions, she made, executed, and de-
livered to the defendants Anthony a warranty deed to the
land in controversy, dated July 2, 1907; which, she says,
was void and not susceptible of ratification, and that on
August 9, 1907, she made, executed, and delivered to them
another like deed, purporting to convey the same land, in
violation of said statute; that said second deed was an
attempted ratification of the prior deed, and was also void,
although executed after the removal of her restrictions,
by reason of the sixteenth section of the Supplemental
Agreement (Act June 30, 1902, c. 1323, 32 Stat. 500). It
was further alleged that the Prairie Oil & Gas Company
claimed some interest in the land adverse to that of plain-
tiff. After the Anthonys had answered, in effect, a general
denial, they admitted the execution and delivery of both
deeds, but denied that the deed of August 9th was exe-
cuted in fraud of the statute, and set up the same as an
independent transaction for a valuable consideration, and
not in ratification of the former deed, as charged. They
alleged themselves to be the owner of the land, and for
cross-relief prayed that their title thereto be quieted.

Prairie Oil & Gas Company for separate answer set
up that they were purchasers of 40 acres of the land in
good faith and for a valuable consideration, and deraigned
title by mesne conveyances from the Anthonys, and, fur-
ther, that since acquiring title thereto it had erected valu-
able and lasting improvements on the land, and taken
therefrom vast quantities of oil, to the amount of more
than $84,000, and for cross-relief prayed that its title to
the 40 acres be quieted.

After issue joined by reply there was trial by a jury
and a general verdict for defendants, upon which the
court, without reviewing the evidence and reaching the

same conclusion as the jury or making any findings of fact, rendered and entered judgment, and plaintiff brings the case here.

This being an action of purely equitable cognizance, the court erred in sending it to the jury and in entering judgment upon the verdict as in a common-law action. *Apache State Bank v. Daniels,* 32 Okla. 121, 121 Pac. 237, 40 L. R. A. (N. S.) 901, Ann. Cas. 1914A, 520; *Watson v. Borah et al.,* 37 Okla. 357, 132 Pac. 347. Rev. Laws 1910, sec. 4993, provides:

"Issues of law must be tried by the court, unless referred. Issues of fact arising in actions for the recovery of money, or of specific real or personal property, shall be tried by a jury, unless a jury trial is waived, or a reference be ordered, as hereinafter provided"

—and section 4994:

"All other issues of fact shall be tried by the court, subject to its power to order any issue or issues to be tried by jury.  *   *   *"

This, not being an action for the recovery of money or of specific personal property, was properly triable to the court, who had a right to send or not to send issues of fact arising therein to the jury for specific findings. The proper practice is stated in the syllabus in *Success Realty Co. v. Trowbridge,* 50 Okla. 402, 150 Pac. 898. There we said:

"In a case purely of equitable cognizance, neither of the litigants is entitled, as a matter of right, to a trial by jury. In the trial of equity cases the court may call in a jury for the purpose of advising the court upon questions of fact, and the court may either adopt or reject their conclusions as to the same as he sees fit."

But as this error was uncomplained of in the trial court, and it is too late to complain of it here *(Nowlin v. Melvin,* 47 Okla. 57, 147 Pac. 307), we will not reverse the case on that account, but will dismiss the subject in the language of *Dunphy v. Kleinschmidt et al.,* 11 Wall. 615, 20 L. Ed. 223:

"Now, it is perfectly obvious that, with the exception of the verdict being rendered by nine jurors, the trial was altogether conducted as a trial at common law, and that the decree was rendered on the verdict precisely as a judgment is rendered on a verdict at common law. This was clearly an error. The case, being a chancery case, and being instituted as such, should have been tried as a chancery case by the modes of proceedings known to courts of equity. In those courts the judge or chancellor is responsible for the decree. If he refers any questions of fact to a jury, as he may do by a feigned issue, he is still to be satisfied in his own conscience that the finding is correct, and the decree must be made as a result of his own judgment, aided, it is true, by the findings of the jury. Here the judgment is pronounced as the mere conclusion of law upon the facts found by the jury."

See, also, *Lake Erie, etc., v. Griffin et al.,* 92 Ind. 487; *Hall v. Doran et al.,* 6 Iowa, 433; *Milk et al. v. Moore,* 39 Ill. 584. Or, as stated in *Ayers v. Scott,* Ky. Dec. (2 Ky.) 162:

"The chancellor, in order to inform his conscience as to any point arising in a cause, may direct an issue to be tried as to that point; but it is error to submit the whole case arising upon bill and answer to the jury."

Such being the state of the record, our duty is clear. In *Success Realty Co. v. Trowbridge, supra,* we also said:

"4. In all cases which were cognizable only in a court of chancery, this court on appeal has the power to consider the whole record, to weigh the evidence, and, when

the judgment of the trial court is clearly against the weight' of the evidence, render, or cause to be rendered, such judgment as the trial court should have rendered."

See, also, *Schock et al. v. Fish,* 45 Okla. 12, 144 Pac. 584.

The judgment is contrary to both the law and the evidence. Aside from the question of fraud in the procurement of the deeds, which was laid out of the case by the trial court, and correctly, there is no dispute as to the essential facts. The evidence discloses that on July 2, 1907, the land in controversy was a part of plaintiff's allotment in the Creek Nation, upon which restrictions had not been removed, and would not be removed by operation of law until August 8, 1907; that defendants were her lessees in possession under an oil and gas mining lease theretofore duly recorded; that they wanted to buy the land; that plaintiff's husband, co-operating with defendant Senes W., to induce her to sell it, on July 1st took her to his house, where they stayed all night, and with Senes next day they drove to Sapulpa; that there, at a certain law office, she, on that day, made, executed, and delivered to the defendants Anthony a warranty deed to the land, which was duly recorded. The pertinent part of the deed reads:

"For and in consideration of the sum of ($3,600) thirty-six hundred dollars, of which amount three hundred ($300) dollars is this day paid in cash, the receipt of which is hereby acknowledged, and the remainder to be due in two installments; one evidenced by a promissory note of this date, due August 9, 1907, for the sum of seventeen hundred ($1,700) dollars, and one note dated this date, due August 9, 1908, for the sum of sixteen hundred ($1,600) dollars, said last note to draw interest from August 9th, 1907, at the rate of seven (7) per cent. per annum," etc.

At the time the deed was delivered the $300 part consideration recited therein was paid, the deferred payments were evidenced by two promissory notes, as therein stated, and both were delivered to her, and she was requested by the Anthonys, the grantees therein, to return to the same place on August 9th, which she did. There on that date, present both plaintiff and the defendants Anthony, they prepared a like warranty deed, purporting to convey to them the same land for the same consideration, which she then and there made, executed, and delivered to them, at the same time surrendering to them their two notes recited in the deed of July 2d, the former of which they paid, and at the same time delivered to her their note for $1,600, as evidence of the deferred payment mentioned in the second deed. The pertinent part of said deed reads:

"In consideration of the sum of thirty-six hundred ($3,600) dollars, of which amount two thousand ($2,000) dollars in cash paid, the receipt of which is hereby acknowledged, and sixteen hundred ($1,600) dollars to be paid one year from this date, for which a note has this day been executed, dated the 9th day of August, 1907, and due the 9th day of August, 1908, bearing interest at the rate of seven (7) per cent. from date, have this day granted," etc.

Prairie Oil & Gas Company deraigned their title to 40 acres of this land by mesne conveyances from the grantees in said deed, which was duly recorded. Both sides concede that the deed of July 2d was void. And such it was, as a fraud upon the statute participated in by both parties thereto. But defendants contend, and the court, in effect, found, that the two deeds were not evidence of or part of one and the same transaction, and hence the intent to evade the statute by the taking of the first could not be said to taint the second, and hence the second deed was

good and passed the title.  The court was wrong.  The deed of July 2nd was not only void as executed before the removal of the restrictions, but, as it is impossible to conceive of the execution of that deed without a prior contract or agreement to make it, and which, when made, would enter into and form a part of the transaction evidenced thereby, it is apparent that said deed was made pursuant to a contract or agreement entered into prior to the removal of restrictions, which entered into that transaction, and hence, if that deed and the deed of August 9th were evidence of or part of one and the same transaction, that intent to violate the statute was carried into and tainted the second deed.

And since an agreement is nothing more than "a coming together of parties in opinion or determination; the union of two or more minds in a thing done or to be done; a mutual assent to do a thing" (Bouvier)—we repeat, it is impossible to conceive a thing done, as here, without at least a prior tacit agreement to do that thing.  And these two deeds were evidence of or part of one and the same transaction.  This for the reason they evidenced a contract between the same parties concerning the same subject-matter and were intended to accomplish the same object.  In *Brake v. Blain,* 49 Okla. 486, 153 Pac. 158, speaking of two instruments to convey land there in question, we said:

"The two agreements in writing, *supra,* constitute one contract, * * * and should be construed together.  We say this for the reason that, although not executed at the same time, they refer to the same subject-matter, and on their face show that each was executed as a means of carrying out the * * * other.  *Canadian Coal Co. v. Lynch,* 28 Okla. 585 [115 Pac. 466]."

As the word "transaction" is, according to Webster (International Dict. 1915 Ed.) derived from two Latin words, *"trans,"* across, and *"agere"*, to drive, and as it is apparent that what these parties attempted to accomplish thereby was to drive across, or, in other words, "put over," from one to the other the title to this land, it follows that they were part of that transaction, and, as such, evidence thereof, and not only must be construed together, but as having been made with a common intent, so that the taint in the one will taint the other. This thing of carrying taint from one instrument to another is not new. In *Treadwell, Adm'x, etc., v. Archer,* 76 N. Y. 196, in the syllabus it is said:

"Where, upon the maturity of a promissory note given for a usurious loan, for the purpose of an extension, the borrower delivers to the lender a new note, by its terms made payable to a third person, which note is transferred by the lender to said third person, it is tainted with the usury, and is void in the hands of the payee, although he received the same in good faith and without knowledge of the usury."

And this thing of a determination by a court of the intent with which two deeds were made is nothing new. In *Pullman v. Bennett,* 55 Cal. 368, G., being owner of the B. ranch, agreed to convey to F. and W. 5,000 acres on the lower end of it, 500 acres to F. and 4,500 acres to W., and pursuant thereto on the same day executed deeds to F. and W., but as to which was delivered first the evidence was conflicting. In an action of ejectment brought by grantees of F. against subsequent grantees of G., it was held that the deeds, being executed at the same time, were part of the same transaction, and that, construing them together, it must have been understood and agreed, among other things, that the W. deed should be first located. If

the court could there take those two deeds and determine what must have been the understanding between the parties thereto at the time they were executed, and if the court can take one or more deeds by their corners and say, in the light of the evidence before him, whether they are made in fraud of creditors, which, of course, is frequently done, we can and will so take these deeds and say, as a conclusion of law from the undisputed facts before us, whether they were executed in fraud of the statute. What, then, is the prohibitive force of the undisputed evidence surrounding these two deeds and which characterizes their execution? As we have seen, the logical inference to be drawn from the making of the deed of July 2d is that it was executed pursuant to an agreement to convey, entered into between the parties thereto before the removal of restrictions; in fact a deed is defined to be "a contract under seal, signed and delivered by the parties thereto." It was ineffectual to accomplish the purpose for which it was made, and no doubt placed of record so as to cloud the title and keep others from buying until such time as the restrictions were removed and the grantees therein left free to effect a transfer of the title to the property by securing the execution of another. The act of April 26, 1906, was leveled at this very practice. In *Simmons v. Whittington*, 27 Okla. 366, 112 Pac. 1018, we said:

"Prior to the enactment of April 26, 1906, contracts and agreements for sale and purchase of allotments made before the removal of restrictions were void; but there existed no statute which specifically made deeds, procured after the removal of restrictions, in pursuance of contracts made before, void. Congress, no doubt, recognized that while such contracts to purchase and sell, made before the removal of restrictions, were void and could not be made the basis of an action for specific performance, designing persons, by procuring such contracts, could use them as a

moral force to induce the Indian allottee, after the removal of his restrictions, to execute a deed which, when obtained, would be valid, and by such practice defeat the policy of Congress to protect the allottee from liability under any contract made before Congress deemed such allottee competent to transact his business and handle his property as other persons. Such contracts, although void, would constitute such a cloud upon an allottee's title as to render it, after the restrictions had been removed, unmarketable, without first obtaining a decree of court canceling such instruments. An opportunity was therefore afforded designing persons to obtain such contracts, thereby clouding the title of the allottee and forcing him to sell his land, when it became alienable, to the owner of such illegal contracts, or be to the expense of litigation to clear his title. But when any deed, procured in pursuance of such a contract, is struck down by the statute, all fruits of such contracts are destroyed, and there can be no inducement to obtain them. It was to accomplish this that this act was passed."

As evidence of the fact that the transaction of passing the title to the land did not end with the execution and delivery of the deed of July 2d, plaintiff was paid only $300 of the $3,600 consideration recited therein at that time, and was requested to return to the same place on the day after her restrictions were removed. Why return if the transaction was at an end? And why return on a day when she could make a valid deed to the land, unless it was for the purpose of renewing the transaction? and why make the deferred payment of $1,700, due and payable to her on that day, if not as an inducement to secure her return to that end? Accordingly, with intent to consummate the transaction of putting over the title from the plaintiff to the defendants Anthony, they met on August 9th at the same place, and proceeded to consummate the deal. And to that end the second deed was made, executed, and delivered, whereupon the parties grantee therein

paid off the $1,700 note made payable that day to plaintiff, which made up, with the $300 already paid her, the $2,000 cash payment recited in the second deed, and executed their note, payable to her for $1,600, as therein recited, which was afterwards paid. From all of which it appears that, being evidence of or part of one and the same transaction, the taint of illegality in the first was carried over and entered into the making of the second deed, and that both must fall for the reason that for their making a contract or agreement was entered into before the removal of the plaintiff's restrictions. This is in keeping with *Alfrey v. Colbert,* 7 Ind. T. 338, 104 S. W. 638, which was quoted approvingly on another point in *International Land Co. v. Marshall,* 22 Okla. at page 709, 98 Pac. 951, 19 L. R. A. (N. S.) 1056. In the Alfrey Case, for a consideration of $550, a minor executed a deed to 120 acres of his land, which was void on account of his minority. After he became of age and could convey, for and in consideration of the payment of the money for the first deed and the additional sum of $5 he executed another deed to the same land to the same party, and in that action both deeds were sought to be set aside. In setting them aside the court, in effect, held that as the consideration of the first deed entered into the consideration of the second, and both were evidence of one and the same transaction, both were void. In passing, the court said:

"The last contention of appellant is: 'That if the first deed could not be ratified, or affirmed, the second deed conveyed title as an original conveyance; that the $550 paid when the first deed was executed, together with the $5 paid when the second deed was executed, made a good and sufficient consideration for the execution of the second deed.' But if the $550 was the consideration of the first deed, which the master and the court found to be void,

then how can that be a consideration in the second deed, except it be to ratify the void deed? The only consideration moving between the parties at the time of the execution of the second deed was $5 and the including of the $550 in the consideration of the second deed makes conclusive the fact that the second deed was an attempt to ratify the first deed, which has been declared to be void."

And in the syllabus:

"A minor Indian, who, receiving $550, makes a deed of allotted land, void by Act of June 30, 1902, c. 1323, sec. 16, 32 Stat. 503, modified by Act April 21, 1904, c. 1402, 33 Stat. 204, and after he becomes of age, without further consideration except $5, makes another deed to the same person of the same land, does not give an original conveyance, but merely attempts to ratify the first deed, which is not susceptible of ratification."

On appeal the decree in the case was affirmed (*Alfrey et al. v. Colbert,* 168 Fed. 231, 93 C. C. A. 517), and that, too, on the ground, among others, that the second deed was intended to be confirmatory of the first.

We said that $300 was paid in part consideration for the land at the time of the execution and delivery of the first deed, and such is the undisputed evidence. Not only does plaintiff so state, but she is borne out by the face of the deed wherein she acknowledged the receipt of said amount from the grantees therein. Neither of them denies that they paid her that amount at that time. In fact, they introduced no evidence concerning the execution and delivery of the deed of July 2d, or the consideration therefor. Senes W., however, testified that the recited consideration of $2,000 cash in the second deed was not all paid plaintiff in cash, as therein stated, but that $300 of it was withheld at that time and paid by him to extinguish a prior outstanding lease on the property made by plaintiff to one

Kennedy in 1904. By this he would have us believe that no part of the consideration for the first deed entered into the second, which we decline to do, and, since it is not claimed he withheld and paid out the $300 to Kennedy pursuant to any understanding or agreement between plaintiff and himself, or with her knowledge or consent, we will take her statement concerning the entire matter, and hold, as we do, that the $300 was paid her in cash at the time of the execution and delivery of the first deed, and that part of the consideration for that deed entered into the consideration for the deed of August 9th.

It will not do to say that, as these two deeds were not executed at the same time, they are not to be construed as one instrument. In 6 R. C. L., sec. 240, after the learned author states the rule to be:

"That in the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction, are, in the eye of the law, one instrument, and will be read and construed together as if they were as much one in form as they are in substance" —he further says:

"In order to make the rule applicable it is not essential that the two instruments shall be executed simultaneously. When two written contracts are entered into between the same parties, concerning the same subject-matter, whether made simultaneously or on different days, they may, under some circumstances, be regarded as one contract, and interpreted together."

In support of this rule he cites *Blagen v. Thompson*, 23 Or. 239, 31 Pac. 647, 18 L. R. A. 315. There it is said:

"When two written contracts are entered into between the same parties concerning the same subject-matter, whether made simultaneously or on different days, they

may, under some circumstances, be regarded as one contract, and be interpreted together. *Dean v. Lawham,* 7 Or. 422; *Kruse v. Prindle,* 8 Or. 158; Bishop, Cont., sec. 165."

In *Chicago Trust & Savings Bank v. Chicago Title & Trust Co.,* 92 Ill. App. 366, in the syllabus it is said:

"Where two instruments are executed as a part of the same transaction and agreement, whether at the same or different times, they will be taken and construed together."

To the same effect is *Joy v. City of St. Louis,* 138 U. S. 1, 11 Sup. Ct. 243, 34 L. Ed. 843; *Knowles v. Toone,* 96 N. Y. 533; *St. Louis, I. M. & S. Ry. Co. v. Beidler,* 45 Ark. 17; *Wildman, Assignee, v. Taylor et al.,* 4 Benedict's Dist. Ct. Rep. 42; *Chicago Trust & Sav. Bank v. Chicago Title & T. Co.,* 190 Ill. 404, 60 N. E. 586, 83 Am. St. Rep. 138; *Neill v. Chessen,* 15 Ill. App. 266; *Stacey v. Randall,* 17 Ill. 467; *Richardson v. Single,* 42 Wis. 40; *Gerdes v. Moddy,* 41 Cal. 335; *Leach v. Rains,* 149 Ind. 152, 48 N. E. 858.

We are therefore of opinion that, although executed at different times, as both deeds refer to the same subject-matter and each was executed as a means of carrying out the intent of the other, both are evidence, or parts, of one and the same transaction, and should be construed together as one instrument; that, the first deed being void as in fraud of the statute, not only in that for the making of which an agreement was entered into before the removal of restrictions, but in that a part of the consideration of the first entered into the consideration for the second deed, the taint of illegality in that deed tainted the second, and that both were taken in fraud of the statute, and both are void, and, being void, that the subsequent purchaser takes no title.

Let the cause be reversed and remanded, not for a new trial, but to be proceeded with pursuant to the views herein expressed.

All the Justices concur, except KANE, C. J., and THACKER, J., who dissent.

---

KANE, C. J. (dissenting). After hearing argument upon rehearing and a more thorough examination of the record and briefs filed by able counsel, I am unable to concur in the conclusion reached by my Brothers.

This was an action commenced by the plaintiff in error, plaintiff below, against the defendants in error, defendants below, to recover possession of plaintiff's surplus allotment, containing 120 acres of land situated in Creek county. The plaintiff was an adult citizen of the Creek Nation of one-eighth Indian blood. The allegations of her petition, in so far as it is necessary to notice them herein, were, in effect, that on the 3d day of January, 1906, she executed an oil and gas mining lease to the defendants, Senes W. and Charles H. Anthony, embracing said 120 acres of land; that on the 2d day of July, 1907, she executed a deed of warranty to one of said defendants, purporting to convey the same tract of land; that on the 9th day of August, 1907, she made, executed, and delivered to the same defendants another deed of warranty purporting to convey to the said defendants the same tract of land; that said plaintiff is an uneducated woman who can neither read nor write, and that the defendants, Senes W. and Charles H. Anthony, procured plaintiff to sign and deliver to them said deeds of July 2, 1907, and August 9, 1907, respectively, upon the false and fraudulent statements and representations made to her that said deeds

were renewals of said oil and gas mining lease of January 3, 1906; that said deed of July 2d was executed before the removal of the restrictions upon her surplus allotment, and was therefore null and void; that said deed of August 9, 1907, was void because no consideration whatever was paid therefor, and that the same was obtained fraudulently, as aforesaid, and for the purpose of an attempted ratification of said deed of July 2, 1907. The answer of the Anthonys consisted: (1) Of a general denial of each and every allegation of the petition not specifically admitted; (2) an admission, to the effect that the plaintiff executed and delivered to them the deed of August 9, 1907, and a special denial that the execution of said deed was induced by any fraud or false representations, alleging that the full consideration stated therein was paid for the land described therein, and that the plaintiff understood the full meaning, purport, and effect of said conveyance; and they specially denied that said deed of August 9, 1907, was taken in ratification of any former deed, alleging that said deed was taken as a separate and distinct conveyance for an adequate consideration, which has been fully paid.

The answer of the defendant Prairie Oil & Gas Company, which deraigned its title through the Anthonys, was, in effect, the same as the answer of the Anthonys, with the exception that it undertook to plead facts which, it contends, entitle it to the status of an innocent purchaser. Thereafter the plaintiff filed her reply to the answers of the defendants, in which she denied every statement and allegation contained in said answers, except such as admitted statements in plaintiff's petition. After various preliminary motions had been overruled, the cause was tried to a jury. The plaintiff in her own behalf testified, in substance, that by reason of certain false representa-

tions and statements made to her by her husband, she was led to believe that the instrument presented to her for signature at the time she executed the two deeds to her surplus allotment were renewals of the oil and gas lease formerly given to the Anthonys, as alleged in her petition. Other witnesses were offered for the purpose of corroborating this theory. Whereupon the plaintiff rested her case. Thereupon the Prairie Oil & Gas Company, Senes W. Anthony, and Charles H. Anthony, separately demurred to the evidence offered by the plaintiff, for the reason that the evidence, if taken as true, and every legal presumption resolved in its favor, failed to constitute a cause of action against said defendants. Thereupon the following statement was made by the court:

"If the only question in this case at this time is the question of fraud, the court would, under the testimony in this case, sustain the motion, but an additional question enters into this case of the attempted ratification of a void deed. The facts as they appear at this time are that a deed was taken which was absolutely void, on that date, $2,000 was paid, and a new deed is taken a few days later, which under the law a deed could be taken, and the consideration is the same as in the first deed, and recites a consideration of $3,600. * * * If this first deed was void and the second was a ratification, then there could be no innocent purchasers, no matter how far removed, under the law in this state. The demurrer is overruled; exceptions allowed. I will instruct the jury there is not sufficient testimony to constitute fraud."

Thereupon Senes W. Anthony in his own behalf testified, in substance, that on the 9th day of August, 1907, he purchased the 120 acres of land involved herein from said plaintiff, for which the deed of that date was executed; that the consideration for said sale was $3,600, which was fully paid on that date. That the consideration

consisted of a promissory note for $1,600 and $1,700 in cash, and $300, which was withheld, to pay for an agricultural lease held by Hackney & Kennedy, which did not expire until two years from the date of the sale. In rebuttal the plaintiff testified as follows:

"Q. Mrs. Carter, you heard the testimony of Mr. Anthony just now, did you? A. Yes, sir. Q. I will ask you if, on August 9, 1907, when this second deed was signed by you, if there was anything said to you or between you and Mr. Anthony, or any agreement entered into on that day whatever between you and Mr. Anthony with respect to him retaining $300 of the purchase money that he was to pay you for that land, to pay on any lease? A. No, sir."

Thereupon the court instructed the jury as follows:

"(1) Gentlemen of the jury, you are instructed that the plaintiff has wholly failed to introduce sufficient testimony to prove fraud as alleged in her petition.

"(2) You are instructed that if you believe from a preponderance of the evidence in this case that the defendants Senes W. Anthony and Charles H. Anthony took a conveyance in the form of a deed from Annie Carter, the plaintiff, on the 2d day of July, 1907, purporting to convey the lands in controversy to the said Anthonys, and that thereafter, on August 9, 1907, they took another deed or conveyance from the said Annie Carter, for the same land, and that the said last deed was taken for the purpose of ratifying the said deed previously taken on July 2, 1907, as aforesaid, then in that case you are instructed that, owing to the restrictions on the plaintiff's land on July 2, 1907, her conveyance of that date was absolutely null and void, and not susceptible of ratification, and the said conveyance taken by the defendants from said Annie Carter on August 9, 1907, if taken for the purpose of ratification of said former deed, would be absolutely null and void, and as to whether the said deed of August 9, 1907,

was taken by the defendants Anthony for the purpose of ratifying the said former deed of July 2, 1907, you will look to the conduct of the plaintiff and the said Anthonys; that is to say, what was done and said by them at the time of the taking of the said first deed of July 2, 1907, and as to what they did and said at the taking of the second deed on August 9, 1907; and you will consider for this purpose all of the evidence surrounding the transactions, and look to the deeds themselves, which are in 'evidence; and if you believe from all of the evidence that the said second deed was taken for the purpose of ratifying the said first deed, then your verdict should be in favor of the plaintiff and against the defendants Anthony, and also against the defendant Prairie Oil & Gas Company, for the reason that the defendant Prairie Oil & Gas Company stands in the shoes of the said Anthonys as to its title in this land, and is bound and concluded by your finding that said last deed of August 9, 1907, was made for the purpose of the ratification of said first deed of July 2, 1907.

"(3) You are further instructed that the deed executed July 2, 1907, is void and conveyed no title, and that it is claimed by the plaintiff that the deed of August 9, 1907, is an attempted ratification of said deed. Upon this point, you are instructed that the burden of proof is upon the plaintiff to establish by a fair preponderance of the testimony that the deed of August 9, 1907, is a ratification of the deed of July 2, 1907; and, if you so find by such fair preponderance of the testimony, then your verdict should be for the plaintiff in this case.

"(4) You are further instructed that if all of the consideration for the deed of August 9, 1907, as expressed therein, was paid for the execution thereof, and that none of the consideration was a part of that which was paid as consideration of the deed of July 2, 1907, then the same would not be a ratification, but would be a new and independent transaction, and the burden is upon the plaintiff to prove by a fair preponderance of the testimony that

some of the consideration of the deed of July 2, 1907, formed a portion of the consideration, for the conveyance of August 9, 1907, and if the plaintiff has failed to establish this by a fair preponderance of the evidence, then your verdict should be for the defendant."

Thereupon the jury retired, and thereafter returned the following verdict:

"We, the jury, impaneled and sworn in the above-entitled cause, do upon our oaths find for the defendants."

Thereupon the court entered judgment against the plaintiff and in favor of the defendants, quieting their title to the land in controversy, etc., to reverse which this proceeding in error was commenced.

The general assignments of error necessary to notice herein may be stated briefly as follows: (1) The court erred in holding that there was not sufficient evidence adduced at the trial to take the case to the jury on the question of actual fraud in the procurement of both deeds; (2) the court erred in submitting to the jury the question whether the deed of August 9, 1907, was given in ratification of the former deed, dated July 2, 1907.

In my opinion, the judgment of the court below should be affirmed. All the evidence offered by the plaintiff was in support of her charge of actual fraud, which, she alleged, consisted in certain false statements made to her by her husband, which induced her to believe that she was signing renewals of an oil and gas lease, when in truth and in fact she was executing deeds of conveyance. I agree with my Brothers that this evidence was so vague, uncertain, unsatisfactory, and altogether lacking in that weight and cogency necessary to set aside a deed on the ground of fraud as to warrant the court in instructing the jury that the plaintiff had wholly failed to introduce suf-

ficient testimony to prove fraud, as alleged in her petition. *Moore v. Adams et al.*, 26 Okla. 48, 108 Pac. 392.

On the next proposition able counsel of record for the respective parties have filed voluminous briefs, which are supplemented by many briefs prepared by counsel *amici curiae*. These briefs are all filed upon the assumption that the case as made by the evidence requires a construction of section 16 of the act of Congress of June 30, 1902, and section 19 of the act of Congress of April 26, 1906. The trial court also seems to have taken this view of it, and it is upon this theory that the opinion of the majority of this court is based. After a very careful examination of the record upon petition for rehearing, I am unable to see the case in that light. It is true that the plaintiff set out allegations in her petition to the effect that both deeds were violative of the federal acts, but she offered no evidence tending to support these allegations, and nothing was developed at the trial which tended to cure this omission. Every particle of evidence introduced or offered by the plaintiff was directed toward establishing the charge of actual fraud, which, according to her statement, consisted in being induced by false representations to sign the deeds, when in truth and in fact she intended to sign a renewal of an oil and gas lease, whilst every particle of evidence introduced or offered by the defendants was for the purpose of rebutting this theory. The deed of July 2, 1907, which is admittedly void as violative of the statute, contains no contract or agreement for the execution of any subsequent deed, and there was no evidence offered or introduced which tended to show that the deed of August 9, 1907, which admittedly was executed after the removal of restrictions, was made pursuant to any contract or agrement entered into before the removal of restrictions, or that it was executed for the

purpose of ratifying any previous deed made before the removal of restrictions. On the contrary, the evidence of the plaintiff is inconsistent with the theory that the last deed was an attempted ratification of any former deed, or that she intended to execute any instrument, either lease or deed, pursuant to any contract or agreement entered into either before the removal of the restrictions or at any other time.

Ordinarily ratification, like a contract, includes within it an intention to approve, by act, word, or conduct, that which was attempted, but which was improperly or unauthorizedly performed in the first instance. *Gallup v. Fox*, 64 Conn. 491, 30 Atl. 756; *Hartman v. Hornsby*, 142 Mo. 368, 44 S. W. 242.

In the face of the testimony of the plaintiff herself that, at the times she signed both deeds, she thought she was signing a renewal of an oil and gas lease, I cannot conceive how it could be held that the last deed, which was executed after the removal of restrictions, was in any sense intended by her to be a ratification of the former deed, executed before the removal of restrictions. And this testimony is also repugnant to the theory that the last deed was executed pursuant to any contract or agreement entered into between the parties before the removal of restrictions. In such circumstances, it is quite clear to me that at the close of the plaintiff's evidence, there being no sufficient proof of actual fraud, and no proof offered for the purpose of showing that the last deed was violative of any statute, the trial court should have directed a verdict for the defendants.

The only additional material evidence offered was the testimony of the defendant Senes W. Anthony, which we have hereinbefore set out in substance. This evidence of

the defendant did not, in any way, tend to show that the last deed was intended as a ratification of any former act or deed, or that it was made pursuant to any contract or agreement entered into prior to the removal of restrictions. On the contrary, it tended directly to disprove any such intention. I, therefore, conclude that there was no evidence introduced at the trial by either party which directly tended to prove that the last deed, which was given after the removal of restrictions, and based upon an adequate consideration, was an attempted ratification of the prior void deed, or that it was given pursuant to any contract or agreement between the parties entered into before the removal of restrictions. Moreover, it may be assumed that, notwithstanding the evidence was not sufficient to take the case to the jury on the question of actual fraud, or, taken literally, did not tend to establish that the last deed constituted a ratification of the void deed, or that it was given pursuant to a contract or agreement made prior to the removal of restrictions, there were some facts and circumstances developed at the trial from which an inference might reasonably be drawn by the jury that the parties entertained an ulterior motive that the last deed should constitute a ratification of the first, or that the first deed should constitute a contract or agreement for the execution of the second, and still the judgment of the court below should not be reversed. In such circumstances, the intention of the parties would be a question of fact for the jury, to be gathered, as the trial court instructed the jury in instruction No. 2—

"from the conduct of the plaintiff and the said Anthonys; that is to say, what was done and said by them at the time of the taking of the said first deed on July 2, 1907, and as to what they did and said at the time of the taking of the second deed on August 9, 1907; and you will consider for this purpose all of the evidence surrounding the transac-

tion, and look to the deeds themselves, which are in evidence."

As the jury found in favor of the good faith of the defendants on evidence which seems to me sufficient, their verdict should not be disturbed.

From the instructions given, it is apparent that the trial court was of the opinion that there was evidence adduced at the trial from which a hidden purpose by the parties to violate the statute might be reasonably inferred, although such an inference would be inconsistent with the expressed purpose of the parties themselves, as disclosed by their evidence. This was the most favorable view for the plaintiff that could possibly have been taken of the case. In my judgment, however, what was said in the case of *Rankin v. Blaine County Bank*, 20 Okla. 68, 93 Pac. 536, 18 L. R. A. (N. S.) 512, wherein a somewhat similar situation arose, is applicable here:

"In the case at bar there really was no issue of fact joined by the evidence to be submitted to the jury. The court probably should have taken the case from the jury; but the mere fact that it presented a certain question to the jury, and the jury made a finding that was entirely consistent with the undisputed evidence, does not, to our mind, constitute prejudicial error, if error at all."

I am also convinced that the conclusion reached by my Brothers is inconsistent in principle with the former opinions of this court, sustaining deeds executed by Indians under somewhat similar circumstances. *Henly v. Davis*, 57 Okla. 45, 156 Pac. 337; *McKeever v. Carter*, 53 Okla. 360, 157 Pac. 56; *Welch v. Ellis et al.*, 163 Pac. 171, and *Co-wok-o-chee v. Chapman*, 171 Pac. 50, both not yet officially reported. The latter case seems to me to be clearly in point, and what was said in *Welch v. Ellis et al., supra*, in relation to the practical construction placed upon these

restrictive statutes by the Secretary of the Interior and the Department of Justice, is peculiarly applicable to the facts and circumstances of the case at bar.

I am also of the opinion that the court is in error in holding that this is an action of purely equitable cognizance, and that the trial court erred in entering judgment upon the verdict as in a common-law action. The plaintiff alleged that she was the owner of the legal and equitable title to the land, and that the two deeds she executed were absolutely void and of no force or effect, wherefore she prayed that the defendants be ejected from the land, and that her title thereto be quieted. It is conceded that she had not been in possession of the land for several years prior to the time she filed her action, the defendants Anthony having been placed in possession by the plaintiff at the time she executed the deeds, and that they, or parties holding under them, have been in quiet possession ever since. Merely because the plaintiff may have denominated her action one to quiet title will not change the nature or character of her remedy. *Harlan v. Bankers M. T. Co.* (C. C.) 32 Fed. 305.

In such circumstances, the rule is well settled that, where the defendant is in possession of the land, there is nothing to hinder plantiff from maintaining an action in ejectment, and, having an adequate remedy at law, he cannot maintain an action in equity to remove cloud from title. *United States v. Wilson,* 118 U. S. 86, 6 Sup. Ct. 991, 30 L. Ed. 110; *Frost v. Spitley,* 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 101; *Crane v. Randolph,* 30 Ark. 579; *Blackwood v. Van Vleet,* 11 Mich. 252. It has frequently been held that a grant or patent may be impeached in an action of ejectment when the issuance of such instrument is unauthorized or prohibited by statute. 9 R. C. L. 913;

*Frazier v. Jenkins,* 64 Kan. 615, 68 Pac. 28, 57 L. R. A. 575; *Kirkpatrick v. Clark,* 132 Ill. 432, 24 N. E. 71, 8 L. R. A. 511, 22 Am. St. Rep. 531. But, as in my judgment there was ample evidence to support the verdict, whether the action be treated as one at law, as in the court below, or in equity, as by this court, I do not deem it necessary to discuss this question at any great length.

I am authorized to state that Mr. Justice THACKER concurs in this dissenting opinion.